## MATTER OF CARBALLE

### In Exclusion Proceedings

### A-22788430

### Decided by Board February 13, 1986

(1) An alien is barred from the relief of withholding of deportation if he, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.

(2) Once a finding is made that an alien has been finally convicted of a particularly serious crime, it necessarily follows that the alien is a danger to the community of the United States.

(3) Because the proper focus is on the serious nature of the crime and not on the likelihood of future serious misconduct on the part of the alien, the contention that the statute requires two separate and distinct findings as to "seriousness of the crime" and "danger to the community" is rejected.

(4) If an applicant is statutorily ineligible for withholding of deportation because he is a danger to the community of the United States, having been finally convicted of an inherently particularly serious crime, e.g., armed robbery, background evidence including the circumstances of the crime is not relevant to the determination of statutory eligibility.

EXCLUDABLE: Act of 1952—Sec. 212(a)(9) [8 U.S.C. § 1182(a)(9)]—Crime involving moral turpitude

Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

ON BEHALF OF APPLICANT:
Robert L. Boyer, Esquire
623 West Flagler Street
Miami, Florida 33130

ON BEHALF OF SERVICE:
David Dixon
Appellate Counsel

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated February 6, 1985, the immigration judge found the applicant excludable on the grounds set forth above, denied his applications for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1253(h) (1982), and ordered that he

be excluded and deported from the United States.[1] The applicant appeals the denial of asylum and withholding of deportation. The appeal will be dismissed.

The applicant is a 22-year-old native and citizen of Cuba. After departing Cuba and arriving at Key West, Florida, in April 1980 as part of the Mariel boatlift, the applicant was paroled into the United States.

On February 18, 1983, in the Circuit Court for Dade County, Florida, the applicant was convicted, on his plea of guilty, of (1) robbery with a firearm, to wit, a pistol (two counts), (2) attempted robbery with a firearm, to wit, a pistol (two counts), (3) grand theft second degree, and (4) accessory after the fact, in violation of sections 812.13, 812.014, and 777.03 of the Florida Statutes. The applicant was sentenced to terms of 15 years each on the robbery and attempted robbery counts with the sentences to run concurrently. He also was sentenced to terms of 5 years each on the grand theft and accessory counts with the sentences to run concurrently with the robbery counts. He was incarcerated at the time of the exclusion hearing.

At his hearing, the applicant, through counsel, conceded excludability under section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20) (1982), and did not contest excludability under section 212(a)(9) of the Act. He requested asylum and withholding of deportation. The applicant submitted that he would be imprisoned and singled out for disparate treatment by Cuban authorities because he was one of the first Cubans to enter the Peruvian Embassy in Havana in 1980. The record includes a "Safe Conduct Definitive," issued by the Cuban Government, which essentially authorized the applicant's safe conduct from the Peruvian Embassy to any country that offered him a visa. Also, the applicant stated that he would be persecuted in Cuba because of his robbery convictions in the United States.

The immigration judge denied the applicant's applications for asylum and withholding of deportation without reaching the merits of the claim or submitting any documents to the State Department for an advisory opinion. See 8 C.F.R. § 208.10(b) (1985). In view of the nature of the offenses that had been committed, the immigra-

---

[1] In his decision, the immigration judge refers to the applicant as Lazarro Caraballe. Inasmuch as there is no issue regarding the applicant's identity, we find that the reference is an inadvertent error and that the decision does, in fact, relate to the applicant. See Corona-Palomera v. INS, 661 F.2d 814 (9th Cir. 1981); United States v. Rebon-Delgado, 467 F.2d 11 (9th Cir. 1972); Valeros v. INS, 387 F.2d 921 (7th Cir. 1967); Vlisidis v. Holland, 245 F.2d 812 (3d Cir. 1957); Matter of Ramirez-Sanchez, 17 I&N Dec. 503 (BIA 1980).

tion judge found that the applicant was ineligible for relief under section 243(h) of the Act as one who had been convicted of a particularly serious crime and constituted a danger to the community of the United States. For the same reason, the immigration judge denied asylum.

In pertinent part, section 243(h)(2)(B) of the Act provides that withholding of deportation "shall not apply to any alien if the Attorney General determines that the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States."

On appeal, the applicant contends that the immigration judge erred in his interpretation of section 243(h)(2)(B) of the Act. Through counsel, he submits that section 243(h)(2)(B) requires two separate factual findings. First, it must be determined that an applicant has committed a particularly serious crime. Then, there must be a second, distinct finding that the applicant constitutes a danger to the community of the United States. The applicant submits that "the use of the present tense verb 'constitutes' in section 243(h)(2)(B) indicates that this second question should be appraised in light of present circumstances and the record should therefore be carefully scrutinized for evidence of rehabilitation or other factors indicating that [the] applicant may not now be a danger to the community."

The Service, however, argues that both the language of section 243(h)(2)(B) of the Act and its legislative history make clear that only one test is required. It is submitted that section 243(h)(2)(B) "establishes a cause and effect relationship between the two clauses." If Congress had "intended to establish two separate criteria," the Service argues, "it could have easily done so by its use of the conjunction 'and.' Instead, the grammatical structure shows that a conviction for a particularly serious crime is the sole factor which Congress has made determinative of whether the alien constitutes a danger to the community."

The Service contends that the legislative history of this statutory provision supports the contention that only one finding is required. The present provisions of section 243(h) of the Act were enacted as part of the Refugee Act of 1980, Pub. L. No. 96–212, 94 Stat. 102. The House Judiciary Committee Report, in reviewing the provisions of section 243(h), noted that an exception to eligibility for such relief included "aliens . . . who have been convicted of particularly serious crimes *which* make them a danger to the community of the United States." H.R. Rep. No. 608, 96th Cong., 1st Sess. 17 (1979) (emphasis added). The Service submits that this language reflects the congressional understanding of how section 243(h)(2)(B)

is properly read. The phrase "danger to the community" is an aid to defining a "particularly serious crime," not a mandate that administrative agencies or the courts determine whether an alien will become a recidivist.

We find that section 243(h)(2)(B) of the Act does not require that two separate and distinct factual findings be made in order to render an alien ineligible for withholding of deportation. It must be determined that an applicant for relief constitutes a danger to the community of the United States to come within the purview of section 243(h)(2)(B). However, the statute provides the key for determining whether an alien constitutes such a danger. That is, those aliens who have been finally convicted of particularly serious crimes are presumptively dangers to this country's community. The clauses of section 243(h)(2)(B), nevertheless, are inextricably related. We have noted that the phrase "particularly serious crime" is not defined in the statute. *Matter of Frentescu*, 18 I&N Dec. 244, 246 (BIA 1982). In determining whether a conviction is for such a crime, the essential key is whether the nature of the crime is one which indicates that the alien poses a danger to the community. As we noted in *Matter of Frentescu, supra*, there are some crimes that are inherently "particularly serious" while others clearly are not. There will be cases, however, where the seriousness of a crime will have to be judged by considering the nature of the conviction, the circumstances and underlying facts of the conviction, the sentence imposed, and whether the type and circumstances of the crime indicate the alien will be a danger to the community. The focus here is on the crime that was committed. If it is determined that the crime was a "particularly serious" one, the question of whether the alien is a danger to the community of the United States is answered in the affirmative. We do not find that there is a statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the alien. *See Crespo-Gomez v. Richard*, 780 F.2d 932 (11th Cir. 1986); *Zardui-Quintana v. Richard*, 768 F.2d 1213 (11th Cir. 1985) (Vance, J., concurring).

Has this applicant been convicted of a particularly serious crime? In addition to two other offenses, the applicant was convicted in the State of Florida, on February 18, 1983, of two counts of armed robbery and two counts of attempted armed robbery. The offenses involved the use of a firearm. They were felonies, as well as offenses against individuals. On their face, they were dangerous.

Robbery is a grave, serious, aggravated, infamous, and heinous crime. *See Matter of Rodriguez-Palma*, 17 I&N Dec. 465 (BIA 1980). We have previously found a California conviction for armed rob-

bery to be a crime rendering an alien statutorily ineligible for withholding of deportation. *See Matter of Rodriguez-Coto*, 19 I&N Dec. 208 (BIA 1985). We have little difficulty concluding that the applicant herein has been convicted of a particularly serious crime and, therefore, constitutes a danger to the community of the United States within the meaning of section 243(h)(2)(B) of the Act. Moreover, the same reasons that lead us to conclude this applicant has been finally convicted of such a crime satisfy us that his request for asylum properly warrants denial in the exercise of discretion.

The applicant complains that the immigration judge erred by refusing to admit background information, including the circumstances of the armed robberies, into evidence. We conclude that there has been no error on the part of the immigration judge as the crimes at issue in this case are inherently "particularly serious."

In *Matter of Saban*, 18 I&N Dec. 70 (BIA 1981), we stated that, pursuant to 8 C.F.R. § 208.10(b) (1981), when an applicant files an application for asylum after he has been placed in exclusion proceedings, the immigration judge must adjourn the hearing for the purpose of requesting an advisory opinion from the Bureau of Human Rights and Humanitarian Affairs, Department of State. *See* 8 C.F.R. § 236.3(a) (1985).

This case is distinguishable from *Matter of Saban, supra.* In *Saban*, it did not appear that the alien was statutorily precluded from withholding of deportation; nor was it evident that asylum would be denied in the exercise of discretion.

In these proceedings, on the other hand, it is clear that the applicant is statutorily ineligible for withholding of deportation. Even if we assume that the applicant established the merits of his claim, no purpose would be served by obtaining an advisory opinion if the ultimate result, as here, is to statutorily preclude the applicant from relief. Similarly, the merits of the applicant's asylum claim need not be addressed. *See INS v. Rios-Pineda*, 471 U.S. 444 (1985); *INS v. Bagamasbad*, 429 U.S. 24 (1976). *See generally Matter of Reyes*, 18 I&N Dec. 249 (BIA 1982). It is evident, based on the applicant's convictions for armed robbery and attempted armed robbery, that asylum would be denied as a matter of discretion. Therefore, no purpose is served by obtaining an advisory opinion when, notwithstanding a favorable recommendation, relief is denied on discretionary grounds.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.