**Nader Ghloum AL–SALEHI, Petitioner,**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 94–9527.**

United States Court of Appeals, Tenth Circuit.

Feb. 8, 1995.

permitted to have a retroactive effect. *Carter v. Sedgwick County, KS,* 36 F.3d 952, 955 n. 1 (10th Cir.1994).

Philip M. Alterman, Beverly W. Oserow, Denver, CO, for petitioner.

Frank W. Hunger, Asst. Atty. Gen., Robert Kendall, Jr., Alison R. Drucker, Dept. of Justice, Civ. Div., Office of Immigration Litigation, Washington, DC, for respondent.

Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

This petition for review raises a question of first impression in the circuit: whether an aggravated felony conviction constitutes an absolute bar to withholding of deportation under 8 U.S.C. § 1253(h)(2)(B), without the need for an additional, specific finding of danger to the community. For the reasons expressed below, we join several of our sister circuits and answer this question in the affirmative.[1]

## ADMINISTRATIVE PROCEEDINGS AND JUDICIAL REVIEW

Petitioner entered the United States as a visitor in 1989, and adjusted his status to permanent resident in 1991 based on his marriage to a United States citizen. On June 29, 1992, petitioner was convicted, upon a guilty plea in the United States District Court for the District of Colorado, of possession with intent to distribute at least 500 grams of cocaine. Thereafter, the Immigration and Naturalization Service (INS) issued an order to show cause why petitioner should not be deported as a consequence of this conviction, which is deemed an "aggravated felony" for immigration purposes, see 8 U.S.C. § 1101(a)(43). Petitioner did not contest deportability, but applied for asylum and withholding of deportation. He submitted statements from the prosecuting attorney and sentencing judge, both of whom strongly supported his request for relief from deportation.[2] The Immigration Judge (IJ) denied the application, holding that petitioner's conviction conclusively foreclosed such relief, pursuant to 8 U.S.C. § 1158(d) (asylum) and § 1253(h)(2)(B) (withholding of deportation). On appeal to the Board of Immigration Appeals (BIA), petitioner challenged only the denial of withholding of deportation, arguing that the IJ had misinterpreted § 1253(h)(2)(B). The BIA agreed with the IJ's interpretation and dismissed the appeal.

The statute under review provides in pertinent part:

(1) The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

. . . .

(B) *the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;*

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. The judge wrote she had been convinced by the evidence that "[petitioner] was prodded into arranging a drug purchase [for someone else] by an overly enthusiastic DEA agent who badgered him," that "this was [petitioner's] first and only contact with drugs," that "he has absolutely learned his lesson and will not be involved in the future in any illegal activity," and that "[t]he supplier of the drugs would never have been convicted without [petitioner's] assistance and testimony." Admin.R. at 58. The prosecuting attorney similarly noted petitioner's minimal criminal involvement, sincere remorse, and substantial cooperation resulting in the conviction of a "significant cocaine supplier." *Id.* at 56–57. They both concluded petitioner was an exceptional case warranting the favorable exercise of administrative discretion.

For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.

Section 1253(h) (emphasis added). The underscored passage, with its grammatically indeterminate connection between the prior criminal conviction and the requisite danger to the community, is the focus of the parties' dispute. Petitioner contends, for various reasons, that the conviction serves as a necessary *but not sufficient* condition for the denial of withholding of deportation, i.e., that the conviction is a threshold requirement triggering consideration of danger to the community, which also must be found before relief may be denied under § 1253(h)(2)(B). Because no such finding was made in this case due to the contrary construction of the statute by the IJ and BIA, who deemed petitioner's conviction sufficient in itself to foreclose relief, petitioner asks us to reverse and remand for further proceedings on the merits of his application.

When "our task is to determine if the BIA correctly determined that [petitioner] was deportable under a particular statutory provision," we engage in a two-step inquiry reflecting obeisance to the will of the legislature that drafted the provision and deference to the judgment of the agency entrusted with its implementation:

If the statutory language makes the intent of Congress clear and unambiguous, we give full effect to that intent; if the statute is silent or ambiguous with respect to the specific issue, however, we do not simply impose our own construction on the statute, but give due deference to the BIA's interpretation of the INA [Immigration and Nationality Act] unless it is arbitrary, capricious, or manifestly contrary to the statute.

*Solis–Muela v. INS,* 13 F.3d 372, 375 (10th Cir.1993) (quoting *Mosquera–Perez v. INS,* 3 F.3d 553, 555 (1st Cir.1993)) (internal quotation omitted); *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). While we thus acknowledge the deference owed to "the agency primarily charged by Congress to implement the public policy underlying these [immigration] laws," *INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982), we also recognize that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent," *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9.

## HISTORICAL BACKGROUND

A summary of the pertinent legislative and administrative background, culled from a recent and particularly thorough decision construing § 1253(h)(2)(B), should help to frame our inquiry. We find the source of the provision in a qualified international obligation assumed by the United States with respect to refugees:

Prior to 1980, section 1253(h) conferred discretion upon the Attorney General to withhold the deportation of any alien who would be subject to persecution in the receiving nation on account of race, religion, or political opinion. The Refugee Act of 1980, Pub.L. 96–212, 94 Stat. 107 (1980), amended section 1253(h) to comport with Article 33 of the United Nations Protocol Relating to the Status of Refugees ("Protocol"), Jan. 31, 1967, 19 U.S.T. 6223 (1968), to which the United States had acceded in 1968. The Protocol bound its parties to the substantive provisions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees ("Convention"), July 28, 1951, 189 U.N.T.S. 150. Article 33 of the Convention provides:

1. No Contracting State shall expel or return ("refouler") a refugee ... to ... territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.

2. The benefit of the present provision may not, however, be claimed by a refugee ... *who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community* of that country.

19 U.S.T. at 6276.

*Mosquera–Perez v. INS,* 3 F.3d at 556–57 (footnotes omitted and emphasis added); *see also Garcia v. INS,* 7 F.3d 1320, 1324–25 (7th Cir.1993). Article 33(1) of the Convention is implemented by § 1253(h)(1), which makes withholding of deportation mandatory upon satisfaction of the statutory criteria. *See Nguyen v. INS,* 991 F.2d 621, 626 (10th Cir.1993) ("the Attorney General has no discretion in withholding of deportation decisions"). Likewise, § 1253(h)(2)(B) incorporates the conclusive bar to such relief set out in Article 33(2). Indeed, as highlighted above, the Convention employs the same indeterminate grammatical structure already noted in connection with the statute.

With the enactment of the Refugee Act in 1980, the BIA took up its task of interpreting and applying the provisions we have been considering. The following passage traces the development of the BIA's present position that conviction of a particularly serious crime, and specifically an aggravated felony, ipso facto establishes one's dangerousness to the community, thereby precluding relief under § 1253(h)(2)(B) without the need for any additional consideration of the question of community danger:

> Between 1980 and 1990, the operative standard for determining which crimes were "particularly serious" for section 1253(h)(2)(B) purposes was set forth by the BIA in *In re Frentescu,* 18 I. & N. Dec. 244 (1982):
>
> > While there are crimes which, on their face, are "particularly serious crimes" or are clearly not "particularly serious crimes," the record in most proceedings will have to be analyzed on a case-by-case basis. In judging the seriousness of a crime, we look to [various factors] … and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.
>
> *Id.* at 247. Once an alien's crime was deemed "particularly serious," however, *the BIA interpreted section 1253(h) as not requiring a separate determination that the alien posed a danger to the community. In re Carballe,* 19 I. & N. Dec. 357 (1986) ("The phrase 'danger to the commu-

nity' is an aid to defining a 'particularly serious crime,' not a mandate that administrative agencies or the courts determine whether the alien will become a recidivist.") *modified on other grounds, In re Gonzalez,* 19 I. & N. Dec. 682 (1988).

> The Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978, 5053 (1990), obviated the *Frentescu* analysis for aggravated felonies by appending the following paragraph to section 1253(h):
>
> > For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.
>
> 8 U.S.C. § 1253(h) (1993). The BIA has continued to follow *Carballe* since the 1990 amendment to section 1253(h), by requiring no separate finding of dangerousness to the community in the case of an alien convicted of an aggravated felony.

*Mosquera–Perez,* 3 F.3d at 557 (footnote omitted); *see also Garcia,* 7 F.3d at 1322.

## ANALYSIS

Petitioner looks to four separate sources to support his contrary interpretation of § 1253(h)(2)(B): the language of that particular provision; the structure of the statutory scheme, particularly the divergent treatment of the related matter of asylum; the legislative history of the 1990 amendments; and the nature of the obligations assumed by the United States with respect to refugees under the Convention and Protocol discussed above. We address each of these matters in turn.

### 1. *Statutory Language*

The courts generally have recognized that the linguistic structure of § 1253(h)(2)(B) precludes an unequivocal, conclusive interpretation based on language alone. *See, e.g., Mosquera–Perez,* 3 F.3d at 555–56 (holding provision "ambiguous"); *Martins v. INS,* 972 F.2d 657, 661 (5th Cir.1992) (noting grammatical support for petitioner's position, though affirming BIA's interpretation based on legislative history); *Ramirez–Ramos v. INS,* 814 F.2d 1394, 1397 (9th Cir.1987) (holding BIA's interpretation "reasonable" upon "a close reading of the language"); *see*

*also Garcia,* 7 F.3d at 1326 & n. 6 (characterizing essentially identical Convention provision as "uncertain[ ]" and "somewhat opaque"). *But see Arauz v. Rivkind,* 845 F.2d 271, 275 (11th Cir.1988) (holding statute itself expresses cause and effect relationship between conviction and community danger obviating need for independent finding on latter). We agree that Congress could have expressed its intent much more clearly, either by simply inserting the conjunction "and" between its references to criminal conviction and danger to the community (thus mandating petitioner's construction), or by plainly stating that the requisite conviction also satisfied the community danger element (thus mandating the BIA's construction).

The linguistic difficulty marked here is evidently a result of Congress' adherence to the phraseology of the Protocol, revealing more about the locution of international diplomacy than about Congressional intent. But, whatever its cause, the uncertainty involved favors the BIA by implicating the principle of administrative deference discussed earlier. Moreover, the legislative history referenced *infra* note 4 indicates the BIA accurately divined the statute's intended effect, however obscured by its peculiar derivation.

### 2. *Disparate Treatment of Asylum*

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (quotations omitted). Petitioner invokes this general rule of thumb as a categorical premise from which to argue that Congress' plain and direct exclusion of aggravated felons from asylum relief in 8 U.S.C. § 1158(d) [3] belies the BIA's effort to accord the same effect to the comparatively cryptic language in § 1253(h)(2)(B).

This argument illustrates the myopia that can result from the use of an ahistorical principle of construction in a context with a rich historical background. When Congress added the asylum exclusion to § 1158 in 1990, the *existing* exclusion in § 1253(h)(2)(B) *already* had been interpreted—by the BIA and two circuits—as automatically barring withholding of deportation upon conviction of a particularly serious crime.[4] As Congress was presumptively aware of this prevailing construction of the statute, *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1978), "it was far easier for Congress simply to build on [the existing] structure [of § 1253(h)(2)(B) ] by providing that aggravated felonies are themselves particularly serious crimes [and thus barred under the established construction of the statute], rather than creating a new independent bar [like that created for asylum in § 1158(d) ] based on conviction for an aggravated felony." *Garcia,* 7 F.3d at 1322–23; *see also Mosquera–Perez,* 3 F.3d at 555–56, 559.

### 3. *Legislative History*

Petitioner raises several additional points of legislative history to counter the BIA's interpretation, but these have all been refuted by other courts. First, petitioner notes that the 1990 amendment to § 1253(h)(2)(B), expressly designating aggravated felonies as particularly serious crimes for purposes of the withholding of deportation exclusion, was enacted in lieu of other bills which would have linked such crimes much more directly to the exclusion of relief, in the manner of the asylum amendment. Petitioner contends the fate of these rival bills reflects Congress' explicit rejection of the BIA's approach. We agree with the First Circuit's treatment of this issue, which is firmly guided by Supreme Court precedent:

Mere nonadoption of these legislative bills is not probative of congressional intent in

---

3. "An alien who has been convicted of an aggravated felony ... may not apply for or be granted asylum." 8 U.S.C. § 1158(d).

4. *See Arauz,* 845 F.2d at 275; *Ramirez–Ramos,* 814 F.2d at 1397. Indeed, the legislative history

accompanying the Refugee Act of 1980 indicates Congress explicitly intended the construction imposed on § 1253(h)(2)(B) by the BIA and these courts. *See Martins,* 972 F.2d at 661 (quoting House Judiciary Committee Report).

this instance, however, since several equally tenable inferences[ ] may be drawn from such inaction, including the inference[,] [eminently reasonable here,] that the existing legislation already incorporated the offered change. In these circumstances, it is no less reasonable to infer that the proposed amendment failed of adoption because Congress was satisfied with the administrative and judicial construction then being given section 1253(h)(2) than to assume that Congress intended to signal its dissatisfaction with the prevailing construction.

*Mosquera–Perez,* 3 F.3d at 558 (internal quotations and citations omitted).

Petitioner also directs our attention to a letter written by Senator Edward Kennedy, chair of the Senate Subcommittee on Immigration and Refugee Affairs that approved the 1990 amendments, which suggests Congress intended, as petitioner maintains, that both an aggravated felony conviction and danger to the community must be shown before withholding of deportation may be denied under § 1253(h)(2)(B). The First and Fifth Circuits have addressed and soundly disposed of this point:

> As a general rule, . . . post-enactment legislative history is accorded less weight than contemporaneous commentary. Even if we were to give weight to this letter, it would be counterbalanced by the pre-passage legislative history. . . . [T]he Fifth Circuit, considering the identical question . . ., found unambiguous support for the BIA's interpretation in the legislative history accompanying the Refugee Act.

*Mosquera–Perez,* 3 F.3d at 558 (footnotes and citations omitted); *see Martins,* 972 F.2d at 661 (similarly rejecting Kennedy letter based on contrary indications of legislative intent). We agree and expressly note our reluctance to rely on the unilateral and extra-legislative comments of particular individuals, especially where, as here, full committee reports are available (and indicate contrary views). The same points undercut petitioner's reliance on another item of Congressional correspondence, from Senator Alan Simpson, which, moreover, does not even appear to support petitioner's position—Senator Simpson merely expresses his wish not to deviate from the existing (i.e., pre–1990) system, which, as discussed above, already countenanced the denial of relief under § 1253(h)(2)(B) without a specific finding of danger to the community.

### 4. International Obligations of the United States

Noting, correctly, that legislative intent to abrogate or modify a treaty must be affirmatively and clearly expressed, *Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 252, 104 S.Ct. 1776, 1782, 80 L.Ed.2d 273 (1984) (quoting *Cook v. United States,* 288 U.S. 102, 120, 53 S.Ct. 305, 311, 77 L.Ed. 641 (1933)), petitioner maintains Congress' failure to express any such intention in connection with the passage and amendment of § 1253(h)(2)(B) requires a strict correspondence between constructions of the statute and Article 33(2) of the Convention. Petitioner contends, further, that the BIA's interpretation of § 1253(h)(2)(B) deviates from the Convention provision and, thus, must be rejected.

We have no quarrel with the general legal premise petitioner relies upon; its application here, however, is quite dubious. First of all, this is not a simple case of comparing a disputed statutory construction against a definitively stated treaty obligation. The operative provisions in the Convention and the statute are ambiguous in precisely the same way. Thus, absent some reason—and none have been suggested—to approach the language of Article 33(2) differently, a plausible construction of the statute is perforce a plausible construction of the Convention, thus showing the requisite congruity between statute and treaty. Furthermore, petitioner does not cite any authority for his reading of the Convention; he merely insists in conclusory fashion that it dictates his construction of § 1253(h)(2)(B). We agree with the Seventh Circuit, which considered the same question and stated that "[i]n light of this uncertainty [about the meaning of the Convention], we conclude that the BIA's interpretation of [§ 1253(h)(2)] does not violate Article 33(2)." *Garcia,* 7 F.3d at 1326.

## CONCLUSION

For the foregoing reasons, we hold that the administrative construction of § 1253(h)(2)(B) enforced by the BIA in this proceeding is entitled to our deference. Petitioner, who concedes his prior conviction of an aggravated felony, is therefore conclusively disqualified from withholding of deportation under the statute, regardless of whether other circumstances mitigate his potential dangerousness to the community. As this point is dispositive of the case, the petition for review is DENIED.