FILED
United States Court of Appeals
Tenth Circuit

November 20, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

N-A-M,

        Petitioner,

    v.

ERIC H. HOLDER, JR. Attorney
General of the United States

        Respondent,

UNITED NATIONS HIGH
COMMISSIONER FOR REFUGEES;
DEBORAH ANKER; GUY S.
GOODWIN-GILL; JAMES C.
HATHAWAY;

        Amici Curiae.

Nos. 07-9580 and 08-9527

---

**PETITION FOR REVIEW OF A FINAL ORDER OF THE BOARD OF
IMMIGRATION APPEALS**

---

Laura L. Lichter, Lichter & Associates, P.C., Denver, Colorado, for Plaintiff-
Appellant.

Margaret J. Perry, Senior Litigation Counsel (Joanne E. Johnson, Attorney, with
her on the brief), Office of Immigration Litigation Civil Division, United States
Department of Justice, Washington D.C., for Defendant-Respondent.

Steven H. Schulman and Vivek Arora, Akin Gump Strauss Hauer & Feld,
Washington, D.C., filed an Amicus Curiae brief for The United Nations High
Commissioner for Refugees, in support of Petitioner.

Deborah Anker, Cambridge, Massachusetts, and Jeff Joseph, Joseph Law Firm, Denver, Colorado, filed an Amicus Curiae brief for Deborah Anker, Guy S. Goodwill, and James C. Hathaway, in support of Petitioner.

Before **HENRY**, Chief Judge, **MURPHY** and **TYMKOVICH**, Circuit Judges.

**PER CURIAM**

Petitioner N-A-M seeks review of a Board of Immigration Appeals' ("BIA") decision to remove her to her native El Salvador.[1] Although the Immigration Judge determined that N-A-M had a "viable persecution claim," I.J. Dec. at 8, the Immigration Judge denied, and the BIA affirmed, her petition for withholding of removal because she had been convicted of felony menacing—a "particularly serious crime," pursuant to the Refugee Act of 1980, Pub. L. 96-202, 94 Stat. 102, *see* 8 U.S.C. § 1231.

On appeal, N-A-M asserts three legal errors in the BIA's decision: First, she argues that felony menacing does not constitute a "particularly serious offense" as contemplated by § 1231; second, she asserts that the BIA applied the wrong legal framework in adjudicating her case; and third, she contends that she

---

[1]N-A-M is a preoperative transgender person and wishes to be addressed as a female. *In re N-A-M*, 24 I&N Dec. 336 (BIA 2007). The Immigration Judge refers to N-A-M as a female, stating that N-A-M "testified that she came from a family of four boys and three girls and at the age of 11 she discovered that she had what we might call a discrepancy in her gender." I.J. Dec. at 2–3. Accordingly, this court refers to N-A-M as a female.

was denied due process of law.  Finding no error of law, we affirm.

## BACKGROUND

Appellant, N-A-M, is a thirty-eight year old preoperative transsexual (male-to-female) from El Salvador.  In El Salvador, N-A-M was subjected to multiple instances of persecution due to her transgendered status, and fled to the United States in 2004, entering without inspection.

In June 2005, N-A-M was convicted of felony menacing, in violation of Colo. Rev. Stat. § 18-3-206(1)(a), (b) and reckless endangerment, in violation of Colo. Rev. Stat. § 18-3-208.  Upon conviction, N-A-M was sentenced to four years deferred judgment and four years of probation.

In November 2006, N-A-M was served with a Notice to Appear before an immigration judge to show why she should not be removed from the United States.  She filed an application for asylum pursuant to 8 U.S.C. § 1158, an application for withholding of removal, pursuant to 8 U.S.C. § 1231(b)(3), and an application for withholding of removal under the regulations implementing the Convention Against Torture, at 8 C.F.R § 1208.16(c), 18.  Of these, only N-A-M's withholding claim is before us.

Under 8 U.S.C. § 1231(b)(3)(A),

> the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

However, § 1231(b)(3)(B)(ii) provides an exception to withholding of removal if:

> (B) Exception.
>
>     Subparagraph (A) does not apply to an alien deportable under section 1227(a)(4)(D) of this title or if the Attorney General decides that--
>
>         . . . .
>
>         (ii) the alien, having *been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States*; . . .
>
>         . . . .
>
>     For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime. For purposes of clause (iv), an alien who is described in section§ 1227(a)(4)(B) shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States.

(emphasis added).

The Immigration Judge found that although N-A-M has suffered persecution as contemplated by § 1231(b)(3)(A), her conviction for felony menacing rendered her eligible for removal pursuant to § 1231(b)(3)(b)(ii). The Immigration Judge stated that although N-A-M "has been persecuted in the past . . . [She] has been convicted of a particularly serious crime and thereby constitutes a danger to the community. . . . And, therefore, even though the respondent has a viable

4

persecution claim, [her] application is denied as a matter of law." I.J. Dec. at 7–8.

In April 2007, N-A-M appealed the Immigration Judge's decision to the BIA, contending that the Immigration Judge erred in his construction of § 1231, and violated her due process rights by considering evidence outside of the record of conviction. In a published decision, the Board affirmed the decision of the Immigration Judge. *In re N-A-M*, 24 I. & N. Dec. 336 (BIA 2007). Turning first to N-A-M's particularly serious offense claim, the BIA concluded that "Congress did not intend to limit what offenses may be particularly serious crimes to those offenses classified as aggravated felonies." *Id*. at 341. As to N-A-M's danger to the community claim, the BIA observed that it "no longer engage[d] in a separate determination to address whether the alien is a danger to the community." *Id*. at 341. And finally, in addressing N-A-M's due process challenge, the BIA noted that it "may examine all reliable information and [is] not limited to reviewing the record of conviction and sentencing information." *Id*. at 343.

The Board denied N-A-M's petition for rehearing en banc on March 11, 2008. These petitions followed.

## DISCUSSION

Under 8 U.S.C. § 1252(a)(2), we have jurisdiction to review constitutional challenges and questions of law raised in a petition for review from a BIA decision. *Brue v. Gonzales*, 464 F.3d 1227, 1231 (10th Cir. 2006) (citing 8

5

U.S.C. § 1252(a)(2)(D)).  We review N-A-M's statutory challenge and her due process claim de novo.[2]  *Id.* at 1232. Consistent with the rule in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), the BIA is entitled to deference in interpreting ambiguous provisions of the INA under the specific facts of this case.

1.      *Non-aggravated felonies may constitute "particularly serious" crimes for purposes of 8 U.S.C. § 1231.*

N-A-M challenges the BIA's statutory construction of what constitutes a "particularly serious crime" under § 1231.  *See* Aplt's Br. at 43.  She urges us to accept our sister circuit's limitation of "particularly serious" offenses to aggravated felonies.[3]  *See, e.g.*, *Alaka v. Atty Gen'l of the U.S.*, 456 F.3d 88, 104

---

[2] Although Respondents do not argue that we are without jurisdiction to examine the "particularly serious" crime challenge, to the extent that there is any dispute, we refer to our decision in *Brue*, which observed that "[w]hile we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine [under 8 U.S.C. § 1252(a)(2)] whether the BIA applied the correct legal standard in making its determination. . . .  We review [these] issues raised in the petition de novo."  464 F.3d at 1232 (internal quotation marks omitted).

[3] Section 101(a)(43) of the INA defines "aggravated felony" to include, *inter alia*, "a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43)(F) (footnote omitted).  In the record before the BIA, N-A-M's felony menacing conviction did not qualify as an "aggravated felony." The parties have informed the court that N-A-M has been re-sentenced twice since the conviction.  First, N-A-M was re-sentenced to a term of one year, with 365 days credit for time served.  Then, N-A-M was resentenced again to a term of 364 days.  This factual addition might alter the "particularly serious crime" analysis.  We, however, are statutorily precluded from consideration of this development under 8 U.S.C. § 1252(b)(4)(A) ("[T]he court

(continued...)

6

(3d Cir. 2006) ("The plain language and structure (*i.e.*, context) of the statute indicate that an offense must be an aggravated felony to be sufficiently 'serious.'") (emphasis in original). Because her conviction did not constitute an aggravated felony, she argues, the BIA erred in classifying her felony menacing conviction as a "particularly serious" offense.

The BIA has developed administrative standards for determining what constitutes a particularly serious crime. *See Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982) ("In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community."). We agree that apart from the designation of certain aggravated felonies as "particularly serious" offenses, the statute contains no limiting language restricting the Attorney General's discretion to label other crimes as "particularly serious." And, "[t]he long history of case-by-case determination of 'particularly serious' crimes" counsels against N-A-M's attempt to craft a bright-line rule. *Delgado v. Holder*, 563 F.3d 863, 868 n.7, 869 (9th Cir. 2009) (noting that nothing in the statutory framework indicates an intent "to eliminate the

---

[3](...continued)
of appeals shall decide the petition only on the administrative record on which the order of removal is based."). We posit that even if we were to take the resentencing into account, we would reach the same conclusion.

Attorney General's pre-existing discretion to determine that, under the circumstances presented by an individual case, a crime was 'particularly serious'"). Furthermore, Congress's use of two different terms–"particularly serious" crime and "aggravated felony"– is additionally indicative of substantively distinct meanings. *See, e.g.*, *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1249 (D.C. Cir. 2008). Given these somewhat open-ended definitions, the BIA or the Attorney General is authorized to develop a reasonable construction § 1231 to which we defer under *Chevron*.

2. *Section 1231 does not require a separate "danger to the community" assessment.*

Section 1231(b)(3)(b)(ii) empowers the Attorney General to deny withholding to alien petitioners upon a determination that the petitioner "having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." The BIA construes this provision as requiring *only* an inquiry into whether the alien has committed a particularly serious crime. "[O]nce an alien is found to have committed a particularly serious crime, we no longer engage in a separate determination to address whether an alien is a danger to the community." 24 I. & N. Dec. at 342. N-A-M challenges the BIA's construction of § 1231, contending that the BIA's omission of an inquiry into whether the facts and circumstances of her felony menacing conviction warranted a finding that she is a danger to the community constitutes

8

a misapplication of the legal standard articulated § 1231.

Although N-A-M and the distinguished amici make strong arguments that the BIA is not accurately interpreting the statute and its treaty-based under-pinnings, we are constrained by our precedent to hold otherwise. In *Al-Salehi v. INS*, as conceded by Amicus Curiae United Nations High Commissioner for Refugees, we affirmed the BIA's interpretation of § 1231, holding that no separate danger-to-the-community assessment is required under the statute. 47 F.3d 390, 393 (10th Cir. 1995) (citing *In re Carballe*, 19 I. & N. Dec. 357, 360 (1986) ("The phrase 'danger to the community' is an aid to defining a 'particularly serious crime,' not a mandate that administrative agencies or the courts determine whether the alien will become a recidivist.")). And, as the Second Circuit noted in *Ahmetovic v. INS*, this "interpretation conflating the two requirements has been accepted by every circuit that has considered the issue." 62 F.3d 48, 53 (2d Cir. 1995) (collecting cases); *see Choeum v. INS*, 129 F.3d 29, 42–43 (1st Cir. 1997) (deferring to the BIA's construction of § 1231)); *Yousefi v. INS*, 260 F.3d 318, 327–28 (4th Cir. 2001) (same); *Martins v. INS*, 972 F.2d 657, 661 (5th Cir. 1992) (same); *Hamama v. INS*, 78 F.3d 233, 240 (6th Cir. 1996) (same); *Garcia v. INS*, 7 F.3d 1320, 1323 (7th Cir. 1993) (same). We abide by our rule in *Al-Salehi* and affirm the BIA's construction of § 1231 here; indeed, we remind amici that a panel of this court cannot overturn the decision of a previous panel absent a change in the law. *United States v. Edward J.*, 224 F.3d 1216, 1220 (10th Cir. 2000).

9

3.    *N-A-M suffered no denial of due process.*

Following our precedent that the BIA reasonably construed 8 U.S.C. § 1231, we turn to N-A-M's due process challenge. Under our cases, "when facing removal, aliens are entitled only to procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner." *Schroeck v. Gonzales*, 429 F.3d 947, 952 (10th Cir. 2005) (internal quotation marks omitted). N-A-M asserts that the BIA's reliance on a Statement in Support of Warrantless Arrest ("the Statement") in its "particularly serious crime" analysis violated her due process rights. Although the events articulated in the Statement did result in her felony menacing conviction, the document itself, she contends, reflects hearsay allegations of sexual misconduct for which she received no criminal sanction.

The evidentiary rules are not so strictly applied in immigration hearings. *See Bauge v. INS*, 7 F.3d 1540, 1543 (10th Cir. 1993). The test for admissibility of evidence in a deportation hearing is whether the evidence is probative and its use is fundamentally fair. *Id*. Under our precedent dictating the evidentiary rules for immigration proceedings, we find no fundamental unfairness in the BIA's use of the Statement; N-A-M was free to contest the statement with her own evidence. Accordingly, we reject N-A-M's contention that the BIA's reliance on the statement denied her due process.

10

## CONCLUSION

The BIA's reasonable construction of § 1231 is entitled to our deference, and N-A-M suffered no deprivation of her due process rights. Accordingly, we AFFIRM the decision of the BIA.

08-9527, 07-9580, *N-A-M v. Holder*

**HENRY**, Circuit Judge, concurring:

Although I concur in the outcome of this case, I write separately to address two issues. Turning first to N-A-M's claim that only aggravated felonies constitute "particularly serious crimes," although *Chevron* deference directs us to affirm the Bureau of Immigration Appeals' (BIA) rejection of this argument and this provision presents no *Chevron* exception, it is worth noting that our immigration statutory framework is notoriously complex and the meaning of the statutory language has been a moving target since its inception.

Second, I think that the gravamen of this case involves whether the Refugee Act's withholding of removal provision, 8 U.S.C. § 1231(b)(3)(b)(ii), which incorporates our obligations under the United Nations Convention Relating to the Status of Refugees, 189 U.N.T.S. 150 (July 28, 1951), requires an inquiry into *both* whether N-A-M has been convicted of a "particularly serious" offense and constitutes a "danger to the community." *Stare decisis* binds us to the language of *Al-Salehi v. INS*, 47 F.3d 390, 393 (10th Cir. 1995), which affirmed the BIA's determination that § 1231 does not require a separate inquiry into whether an alien constitutes a danger to the community.

I find, however, N-A-M and amici's arguments persuasive that the interpretation from *Al-Salehi* is at odds with the language of § 1231, with some basic principles of statutory construction, the purpose and intent behind the Refugee Act, and the international legal principles embodied in the Refugee Act.

I urge the Attorney General and the Secretary of State to consider the arguments of amici here, the treaty underlying this provision, and the jurisprudence of fellow signatories to the underlying international commitments. Perhaps the BIA should consider reverting to its previous standards.

I.    *Section 1231's "particularly serious" offense inquiry is a moving target and fickle standard.*

In light of the absence of explanatory statutory language defining "particularly serious" for purposes of § 1231, we give the BIA's construction *Chevron* deference. *Brue v. Gonzales*, 464 F.3d 1227, 1234 (10th Cir. 2006); *Mosquera-Perez v. INS*, 3 F.3d 553 (1st Cir. 1993). I believe it is important to note, however, that several Congressional amendments, substantive administrative changes by the BIA, and a circuit split, subject the provision to different interpretations.

Originally, Congress enacted 8 U.S.C. § 1253(h), now § 1231, in response to our ratification of Protocol 33 to the United Nations' Refugee Convention. Under § 1253(h), withholding was denied to those aliens who "*having been convicted by a final judgment of a particularly serious crime, constitute[] a danger to the community of the United States*" (emphasis added). Under this amendment, the BIA determined on a case-by-case basis which crimes were particularly serious, applying the test articulated by the BIA in *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982) ("In judging the seriousness of a

2

crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community."). Subsequently the BIA identified a class of crimes as inherently particularly serious, so as to eliminate the case-by-case determinations in those cases. *See, e.g.*, *Matter of Garcia-Garrocho*, 19 I. & N. Dec. 423, 425 (BIA 1986) ("We find that the applicant's conviction for burglary in the first degree is within the category of crimes that are per se 'particularly serious.'").

The statutory provision barring "particularly serious" criminals from eligibility from withholding of removal has been subjected to three amendments. With the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, Congress established a per se category of "particularly serious" criminals comprised of aliens convicted of aggravated felonies.

In 1996, with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, 1269 (1996), Congress, in order to comply with agreed to international obligations, relaxed its categorical bar on aggravated felons. *Delgado v. Holder*, 563 F.3d 863, 869 (9th Cir. 2009). Congress amended § 1253(h) to permit the Attorney General to overcome the per se rule banning aggravated felons where "necessary to ensure compliance with the 1967 United Nations Protocol Relating to the

3

Status of Refugees." *Id.* (citing the AEDPA, Pub.L. No. 104-132, 110 Stat. 1214, 1269).

Congress addressed this provision again in 1996 with the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Division C of Pub.L. No. 104-208, 110 Stat. 3009-546, 3009-602. The IIRIRA Amendments create the statute's current form and categorically apply a bar from withholding those aggravated felons sentenced to five years' or more imprisonment. *Id.*

Our resolution of the issue presented in this case turns on the meaning behind Congress's post-1990 statutory enactments. Congress's seeming relaxation of the categorical aggravated felony bar suggests an effort to avoid the inclusion of minor crimes in the class of per se "particularly serious" offenses. The extent of that relaxation, however, is subject to debate—or, at least, has been subject to debate both within the administrative agency, as discussed in Section II, and among the courts. *Compare Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006) (noting that § 1231 "does not state a general rule that only aggravated felonies can be considered" particularly serious crimes) *with Alaka v. Atty Gen'l of the U.S.*, 456 F.3d 88, 105 (3d Cir. 2006) ("We therefore conclude that an offense must be an aggravated felony in order to be classified as a 'particularly serious crime.'").

The BIA has developed administrative standards for determining what

4

constitutes a particularly serious crime. These standards, however, appear to be somewhat in flux. With *Frentescu* in 1982, the BIA articulated four factors relevant to the § 1231 (at that time, the § 1253(h)) inquiry. Specifically (and logically for that matter), the BIA noted that, "[i]n judging the seriousness of a crime, we look to such factors as [1] the nature of the conviction, [2] the circumstances and underlying facts of the conviction, [3] the type of sentence imposed, and, *most importantly*, [4] whether the type and circumstances of the crime indicate that the alien will be a danger to the community." 18 I. & N. Dec. at 247 (emphasis added).

But over time, however, the BIA retreated substantially from *Frentescu*'s danger-to-the-community prong. In the BIA's 1992 decision, *Matter of C-*, the BIA suggested that, except in the case of the aggravated felony, *Frentescu* remained the administrative standard in terms of defining "particularly serious" offenses. *See Matter of C-*, 20 I. & N. Dec. 529, 534 n.3 (BIA 1992) ("There will of course continue to be situations requiring a determination whether a 'particularly serious crime' exists under *Frentescu*; such is the case, for example, where the crime does not technically qualify as an aggravated felony under the Act based on the conviction date."). Despite the clear presence of the phrase in the statute and the logical pronouncement in *Frentescu* that the phrase is the most important factor, the "danger to the community" prong is now absent from the BIA's reiteration of the relevant factors in this case. *See In re N-A-M*, 24 I.

5

& N. Dec. 336, at 342 (BIA 2007) ("[W]e examine the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." (citing *Matter of Q-T-M-T-*, 21 I. & N. Dec. 639 (BIA 1996))). In fact, it appears that the BIA may now disregard *Frentescu* altogether. *Id.* ("On some occasions, we have focused exclusively on the elements of the offense, *i.e.*, the nature of the crime."); *but see Brue*, 464 F.3d at 1234 (affirming the BIA's use of the proper legal standard when it used only "two of the [four] *Frentescu* factors, including the most important one, danger to the community"). Indeed, in this case, the BIA expressed its conclusion that N-A-M satisfies the "particularly serious" crime element on the basis of the elements of the offense alone. 24 I. & N. Dec. at 342–43 ("We find that the respondent's offense is a particularly serious crime based solely on its elements.").

Our precedent requires us to defer to the BIA's reasonable construction of § 1231, and we abide by it here. I note, however, that the BIA's continually competing and definitionally inconsistent constructions of § 1231 frustrate our function as a reviewing court and threaten the reasonableness of its interpretations.

II.     *N-A-M and amici make persuasive arguments that* Al-Salehi *is contrary to 8 U.S.C. § 1231.*

The Immigration Judge summarily stated that N-A-M constituted a danger to the community that statutorily barred the withholding of removal, a finding

that may indeed be factually true as well as legally affirmable.  The Immigration

Judge, however, did not engage in an analysis as to whether N-A-M actually

constituted a danger to the community either under *Frentescu* or any other

model.  Presumably, the absence of such an analysis is because, as the BIA has

now construed § 1231, "this [inquiry] is subsumed within the determination that

the crime is a particularly serious one."  Aple's Br. at 30; *see In Matter of

Carballe*, 19 I. & N. Dec. 357, 360 (1986) ("The phrase 'danger to the

community' is an aid to defining a 'particularly serious crime . . . .'").

Although the circuit consensus, including that of our own, *see Al-Salehi v.

INS*, 47 F.3d 390 (10th Cir. 1995), is that *Chevron* calls for deference, the BIA's

stance on the "danger to the community" element of § 1231 has been the concern

of at least one other circuit.  The Second Circuit, in interpreting the meaning of

that statute, stated that they are "troubled by the BIA's failure to give separate

consideration to whether [petitioner] is a 'danger to the community.'"  *Ahmetovic

v. I.N.S.*, 62 F.3d 48, 52 (2d Cir. 1995).

Although our decision in *Al-Salehi* has been interpreted by other circuits to

stand for the blanket proposition that satisfaction of the "particularly serious"

offense element of § 1231 is sufficient to deny withholding, *see, e.g.*, *Ahmetovic*,

62 F.3d at 54; *Alaka*, 456 F.3d at 95, our *Al-Salehi* decision contains some

important qualifying language.  Specifically, we stated in *Al-Salehi* that the

BIA's interpretation "in *this* proceeding" is entitled to deference, and "Petitioner,

7

who concedes his prior conviction of an aggravated felony, is . . . disqualified;" and "in light of th[e] uncertainty [about the meaning of the (Refugee) Convention], we conclude that the BIA's interpretation of [§ 1253(h)(2)] does not violate Article 33(2)." *See Al-Salehi*, 47 F.3d at 395, 396 (internal quotation marks omitted).

It is important that the facts in *Al-Salehi* were different: Mr. Al-Salehi was convicted of an aggravated felony. Further, both the Seventh Circuit's decision in *Garcia v. INS*, 7 F.3d 1320 (7th Cir. 1993), upon which *Al-Salehi* relied, and *In Matter of Carballe*, 19 I. & N. Dec. 357, relied upon by the Seventh Circuit, involved aggravated felons. There is also a meritorious argument that our rule governing aggravated felons might not apply to non-aggravated felons, such as N-A-M, or might not apply with the same force. Indeed, another provision in the Immigration and Nationality Act ("INA") indicates that the two substantively distinct categories of offenses—aggravated felonies and non-aggravated felonies—receive disparate treatment under the INA. *See, e.g.*, *Chong v. Dist. Dir. INS*, 264 F.3d 378, 385 (3d Cir. 2001) ("The INA bars aggravated felons from entering the United States for ten years. 8 U.S.C. § 1182(a)(9)(A)(ii). [However] a determination that the [] petitioner's conviction did not constitute an aggravated felony could allow the petitioner to reenter the United States.").

Furthermore, I see some unnerving textual impediments to the BIA's construction. Notably, a statute must be ambiguous or unclear before *Chevron*

8

comes into play, *see Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984), and the statutory language is arguably unambiguous. One of the most basic interpretive canons counsels that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). To accept the BIA's recent contention that the "danger to the community" inquiry is subsumed within the "particularly serious" offense inquiry seems to run afoul of the clear language of the statute. The statute mentions both a "danger to the community" inquiry and a "particularly serious" offense inquiry; ignoring one of those inquiries does not give full effect to the meaning to the statute. And, then to take it one step further and to contend that the "particularly serious" offense inquiry can be performed without reference to *Frentescu*'s "danger to the community" element, as the BIA does, seems doubly problematic. *See N-A-M*, 24 I. & N. Dec. at 342 ("On some occasions, we have focused exclusively on the elements of the offense, *i.e.*, the nature of the crime.").

For the reasons above, arguments made by the amicus, United Nations High Commissioner for Refugees (UNHCR) (to whom our Supreme Court has consistently turned for assistance in interpreting our obligations under the Refugee Convention), are noteworthy. *See, e.g.*, *Negusie v. Holder*, 129 S. Ct. 1159, 1175 (2009) (citing Office of the United Nations High Commissioner for

9

Refugees, Handbook on Procedures and Criteria for Determining Refugee Status ¶¶157, 162 (reedited Jan. 1992) in support of its analysis of the nonrefoulement (the mandatory withholding of deportation) principle); *Sale v. Haitian Ctrs. Council*, 509 U.S. 155, 182 (1993) (same); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 438-39 (1987) ("In interpreting the Protocol . . . we are further guided by the analysis set forth in the Office of the United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status (Geneva, 1979).").

As UNHCR notes, our Refugee Act, which implements the Refugee Convention, and specifically, § 1231, embodies a Congressional commitment to the international legal principle of *nonrefoulement*, as it appears in Refugee Convention Article 33. *See INS v. Stevic*, 467 U.S. 407, 421 (1984) (discussing 8 U.S.C. § 1253(h), now codified at 8 U.S.C. § 1231(b)(3) (2006), and noting that the statutory provision regarding withholding of deportation, as amended, conformed to the language of Article 33); *see also Ins v. Cardoza-Fonseca*, 480 U.S. 421, 441 n.25 (1987) (stating that "[t]he 1980 Act made withholding of deportation under [INA] § 243(h) mandatory in order to comply with Article 33.1"). And a wealth of persuasive authority reveals that under both the Convention and the Refugee Act implementing the Convention, the "decisive factor is not the seriousness or categorization of the crime that the refugee has committed, but, rather, whether the refugee, in light of the crime and conviction,

10

poses a *future* danger to the community." UNCHR Am. Br. at 22 (listing several citations).

We can also benefit from reference to international law, as it reveals how other tribunals have interpreted the exact same text. Although citing foreign law is at times controversial, the broad consensus, even among opponents of its use in constitutional law cases, supports its use when determining how other signatories on a treaty interpret that treaty. As Justice Scalia wrote in dissent in *Olympic Airways v. Husain*:

> [The] decision stands out for its failure to give any serious consideration to how the courts of our treaty partners have resolved the legal issues before us. . . .
>
> The Court's new abstemiousness with regard to foreign fare is not without consequence: Within the past year, appellate courts in both England and Australia have rendered decisions squarely at odds with today's holding. Because the Court offers no convincing explanation why these cases should not be followed, I respectfully dissent.

540 U.S. 644, 658 (2004) (Scalia, J., dissenting); *see Air France v. Saks*, 470 U.S. 392, 404 (1985) ("[W]e 'find the opinions of our sister signatories to be entitled to considerable weight.'" (quoting *Benjamins v. British European Airways*, 572 F.2d 913, 919 (2d Cir. 1978))).

As pointed out by the Amicus brief from legal scholars, Deborah Anker, Guy S. Goodwin-Gill, and James Hathaway, the interpretation of the international convention by courts in Canada and the United Kingdom differs from our analysis. In interpreting the underlying international convention, the

11

Supreme Court of Canada noted that a government must "make the added determination that the person poses a danger to the safety of the public or to the security of the country . . . to justify refoulment." *Pushpanathan v. Minister of Citizenship & Immigration*, [1998] 1 S.C.R. 982, ¶ 12. Similarly, the United Kingdom considers whether an alien is "convicted of a particularly serious crime and is a danger to the community." *Immigration and Nationality Appeals Directorate, Changes to Refugee Leave and Humanitarian Protection* (2005) (quoted in *R v. Sec'y of State for Home Dep't*, [2006] EWHC 3513 (Eng. Q.B. 2006)). That other countries—especially, perhaps, these—have interpreted the treaty to have a different meaning from the BIA, calls into question the interpretation made by the BIA and reveals the need for clarification on the correct meaning.

In conclusion, although the meaning of § 1231's "particularly serious" offense provision is not crystal clear, the BIA's construction of the provision to include non-aggravated felonies is reasonable. Furthermore, in light of our decision in *Al-Salehi*, 47 F.3d at 390, we must affirm the BIA's exclusion of a "danger to the community" assessment from § 1231. Nevertheless, N-A-M and amici raise noteworthy arguments that merit the separate discussion of this concurrence and hopefully will draw further scrutiny to this matter.