FILED
United States Court of Appeals
Tenth Circuit

October 17, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

GABRIELA CORDOVA-SOTO,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

---

NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD,

Amicus Curiae.

No. 10-9569

---

**PETITION FOR REVIEW OF A DECISION OF THE
BOARD OF IMMIGRATION APPEALS**

---

Submitted on the briefs:[*]

David K. Link, Gragert, Hiebert, Gray & Link, Wichita, Kansas, for Petitioner.

Stephen J. Flynn, Assistant Director; James A. Hurley, Attorney, United States
Department of Justice, Civil Division, Office of Immigration Litigation,

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Washington, D.C., for Respondent.

Trina Realmuto, National Immigration Project of the National Lawyers Guild, Boston, Massachusetts, for Amicus Curiae.

---

Before **HARTZ**, Circuit Judge, **HOLLOWAY** and **PORFILIO**, Senior Circuit Judges.

---

**HOLLOWAY**, Senior Circuit Judge.

---

Gabriela Cordova-Soto petitions for review of the Department of Homeland Security's (DHS) September 23, 2010 order reinstating her prior removal order under 8 U.S.C. § 1231(a)(5). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

## I.

Ms. Cordova-Soto is a native and citizen of Mexico, who entered the United States as a child without inspection at an unknown place and time. She became a lawful permanent resident in 1991 at the age of 13. In October 2005 DHS initiated removal proceedings against Ms. Cordova-Soto by filing a Notice to Appear (NTA), charging her as removable on three grounds: (1) as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii); (2) as an alien convicted of two crimes involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii); and (3) as an alien convicted of a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i). Ms. Cordova-Soto has three Kansas

-2-

state-law convictions, including a 2005 conviction for felony possession of methamphetamine for which she was sentenced to a suspended jail term of twenty months and eighteen months' probation. This drug-possession conviction was the basis for the aggravated-felon charge in the NTA.

Ms. Cordova-Soto submitted to the Immigration Court a Stipulated Request for Issuance of Final Order of Removal, Waiver of Appearance and Hearing (Stipulation), in which she waived her right to be represented by counsel in the removal proceedings; admitted all factual allegations in the NTA; conceded all charges of removability; waived any right to apply for relief from removal; waived her right to appeal the removal order; and attested that she had executed the Stipulation voluntarily, knowingly, and intelligently. In the Stipulation Ms. Cordova-Soto acknowledged, "I will need to reapply for entrance to the United States . . . and . . . I may not be eligible for admission into the United States in the future." Admin. R. at 11. The Stipulation stated further:

> I understand that by accepting an order of removal, I cannot return to the United States legally for at least ten (10) years without special permission from the Attorney General. If I have been convicted of an aggravated felony, I understand that I may not legally return to the United States at any time without special permission from the Attorney General. I also understand that returning without special permission from the Attorney General could result in further removal proceedings and/or criminal prosecution, and that a conviction for illegal reentry may result in the imposition of a prison sentence of up to twenty (20) years.

*Id.* The immigration judge ordered Ms. Cordova-Soto removed on November 8,

2005. She was furnished with a Warning to Alien Ordered Removed or Deported, informing her that, as an aggravated felon, she was prohibited from entering or attempting to enter the United States at any time and that she would be required to obtain permission from the Attorney General in order to reapply for admission. She was removed to Mexico two days later, on November 10, 2005.

Ms. Cordova-Soto was found in Wichita, Kansas, on March 18, 2010, and she was identified as an alien who had previously been removed. She was initially held in a Kansas jail, apparently due to an outstanding warrant for her arrest on forgery charges, but she was remanded to DHS custody in September 2010. No criminal charges for illegal reentry were lodged against her, but DHS issued a Notice of Intent/Decision to Reinstate Prior Order, advising Ms. Cordova-Soto that she was subject to removal under 8 U.S.C. § 1231(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

DHS informed Ms. Cordova-Soto that she could contest its determination that she was subject to removal by reinstatement of her prior removal order. She submitted a sworn statement in which she alleged that she last entered the United

States on November 27, 2005, less than a month after she had been removed to Mexico. She described how she entered the country at that time:

> I purchased a ticket in Eagle Pass to San Antonio TX. They then put me in the taxi that would cross me over into the U.S. side where I could get on the passenger van that was there waiting. The taxi driver spoke to the inspector who then spoke to the rest of the passenger[s] 3 including me. He asked for ID. And then while I pretended to look for ID he moved on to the other passengers and inspected their things in the trunk. He then hit the car with his hand and waved us through.

Admin. R. at 99. Ms. Cordova-Soto also stated that she had not applied to the Attorney General for permission to reenter the United States. After "review[ing] all available evidence, the administrative file and any statements made or submitted in rebuttal," a DHS official reinstated her prior removal order pursuant to § 1231(a)(5). Admin. R. at 1.

Ms. Cordova-Soto filed a petition for review in which she claims that (1) her underlying removal order was not lawful, and (2) her reentry into the United States after her previous removal was not illegal. On these bases she maintains that reinstatement of her previous removal order was precluded.

## *II.*

We initially examine our jurisdiction to review Ms. Cordova-Soto's claims. She first seeks review of her underlying 2005 removal order, arguing that she submitted the Stipulation and agreed to removal based upon faulty legal advice that her drug-possession conviction was an aggravated felony that made her

ineligible for relief from removal. She asks this court to hold that her underlying removal order was contrary to law and violative of her rights.

Ms. Cordova-Soto acknowledges that, under § 1231(a)(5), an underlying removal order "is not subject to being reopened or reviewed." But she contends that 8 U.S.C. § 1252(a)(2)(D) authorizes this court to review that order to the extent she raises legal and constitutional challenges to it. Section 1252(a)(2)(D) does preserve our ability to review "constitutional claims or questions of law," notwithstanding other provisions in the Immigration and Nationality Act (INA) that limit or eliminate judicial review. But with two stated exceptions, the savings clause in § 1252(a)(2)(D) permitting review of such claims does not apply to jurisdictional limitations *within* that section. *See Lorenzo v. Mukasey*, 508 F.3d 1278, 1281 (10th Cir. 2007).

Another provision in § 1252 provides that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). We have construed the filing of a timely petition for review as mandatory and jurisdictional. *See Nahatchevska v. Ashcroft*, 317 F.3d 1226, 1227 (10th Cir. 2003). This jurisdictional limitation within § 1252 therefore "survived the enactment of . . . § 1252(a)(2)(D)." *Lorenzo*, 508 F.3d at 1281 n.4; *see also Sharashidze v. Mukasey*, 542 F.3d 1177, 1178-79 (7th Cir. 2008) ("[Section] 1252(a)(2)(D), which authorizes this court to decide constitutional claims and questions of law, is explicitly constrained by the 30-day

time limit in § 1252(b)(1).").  Thus, because Ms. Cordova-Soto failed to file her petition for review within thirty days of her 2005 removal order, we lack jurisdiction to review that order, including constitutional claims or questions of law.

Ms. Cordova-Soto also challenges the September 23, 2010 reinstatement order.  "[W]e have jurisdiction to hear petitions for direct review of reinstatement orders under . . . § 1252."  *Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162 n.3 (10th Cir. 2003).  We proceed, then, to consider her claim that DHS misconstrued, and therefore misapplied one of the requirements for reinstatement of a removal order.

## III.

Ms. Cordova-Soto argues that, because her entry into the United States in November 2005 was procedurally regular, she did not reenter the United States illegally; therefore, reinstatement of her previous removal order was precluded. Her argument raises a question of statutory construction, which we review de novo.  *See Brue v. Gonzales*, 464 F.3d 1227, 1232 (10th Cir. 2006).  "If the statutory language makes the intent of Congress clear and unambiguous, we give full effect to that intent[.]"  *Al-Salehi v. INS*, 47 F.3d 390, 392 (10th Cir. 1995) (quotations omitted).  But we will defer to the Board of Immigration Appeals' (BIA) reasonable interpretation of an ambiguous provision of the INA.  *See id.*

***A.***

The Attorney General is authorized to reinstate a prior removal order against an illegally reentering alien. *See* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date . . . ."). The implementing regulation provides that an immigration officer shall make three determinations in establishing whether the alien is subject to reinstatement: "(1) [w]hether the alien has been subject to a prior order of removal"; "(2) [t]he identity of the alien"; and "(3) [w]hether the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a).

We addressed the question of what constitutes an illegal reentry in *Lorenzo*, in which the petitioner alleged that she "reentered the United States in the back of a car, without immigration officials questioning her right to enter." 508 F.3d at 1282. We held that the petitioner's allegations failed to establish that she entered the country legally because she was inadmissible at that time under 8 U.S.C. § 1182(a)(9)(A). *See Lorenzo*, 508 F.3d at 1282-83. Section 1182(a)(9)(A) provides that previously removed aliens who seek admission before the expiration of applicable time periods prescribed by that section are inadmissible. But such aliens are not inadmissible if the Attorney General has consented to their reapplying for admission. *See* § 1182(a)(9)(A)(iii). The petitioner in *Lorenzo* was precluded from gaining lawful admission to the United States for a period of

five years from the date of her removal, yet she reentered the country within a month of her removal, without obtaining authorization to do so from the Attorney General. *See* 508 F.3d at 1283. We concluded, therefore, that she could not have reentered the country legally at that time. *See id.*

Ms. Cordova-Soto alleges that she reentered the United States in a manner very similar to the petitioner's alleged reentry in *Lorenzo*, and she does not claim that she had obtained the Attorney General's consent to reapply for admission. Under our holding in *Lorenzo*, Ms. Cordova-Soto's reentry less than a month after her removal was illegal because she was inadmissible under § 1182(a)(9)(A)(ii), as a previously removed alien convicted of an aggravated felony who sought admission without obtaining the Attorney General's consent. Ms. Cordova-Soto does not attempt to distinguish the facts of her case from those in *Lorenzo*. Instead, she contends that *Lorenzo* failed to address the statutory construction argument that she raises. She asserts that, because her entry into the United States in November 2005 was procedurally regular, it constituted a lawful entry and was therefore not an illegal reentry. We agree that our decision in *Lorenzo* did not address this argument.

### B.

For her proposition that a procedurally regular entry is not an illegal reentry, Ms. Cordova-Soto relies upon the BIA's decision in *Matter of Quilantan*, 25 I. & N. Dec. 285 (BIA 2010). In *Quilantan*, the petitioner had entered the

United States without valid documentation as a passenger in a car driven by her United-States-citizen friend. She alleged that an immigration officer asked her friend if he was a citizen but did not ask her anything, and the officer then waved the car across the border. *See id.* at 286. The question in *Quilantan* was whether the petitioner had been "admitted," so that she was eligible for adjustment of status under 8 U.S.C. § 1255(a). *See Quilantan*, 25 I. & N. Dec. at 286; *see also* § 1255(a) (permitting adjustment of status of alien "who was inspected and admitted or paroled into the United States").

The INA defines "admitted" to mean "the *lawful entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). In *Quilantan*, the BIA addressed whether, in light of this definition, the petitioner was required to establish that her entry was substantively lawful in order to show she had been "admitted." *See* 25 I. & N. Dec. at 287. The BIA noted that it had consistently construed the language "inspected and admitted" in § 1255(a) as requiring only procedural regularity. *See id.* at 289. It concluded that Congress did not intend, in enacting § 1101(a)(13)(A), to require that an alien's entry be substantively lawful in order to qualify for adjustment of status. *See Quilantan*, 25 I. & N. Dec. at 289-92. Therefore, the BIA held that "by themselves, the terms 'admitted' and 'admission,' as defined in section [1101(a)(13)(A)], continue to denote procedural regularity for purposes of adjustment of status, rather than compliance with

-10-

substantive legal requirements." *Id.* at 290. The BIA then concluded that the petitioner's entry was procedurally regular because she physically presented herself for questioning and made no knowing false claim to citizenship. *See id.* at 293.

## *C.*

Ms. Cordova-Soto asserts that, under the BIA's holding in *Quilantan*, her entry in November 2005 was procedurally regular and was therefore a "lawful entry." She focuses on the definition of "admitted" as a "*lawful entry . . .* after inspection and authorization by an immigration officer." § 1101(a)(13)(A) (emphasis added). Because the BIA construed that phrase to require only a procedurally regular entry, she argues that a previously removed alien's *re*entry is likewise "lawful" if it was procedurally regular. Thus, according to Ms. Cordova-Soto, the language "reentered the United States illegally" in § 1231(a)(5) does not mean a reentry in violation of substantive law.

We are not persuaded. In *Quilantan* the BIA interpreted the term "admitted" as it is used in § 1255(a). *See* 25 I. & N. Dec. at 288-92. It focused on the long history of requiring only a procedurally regular entry in order for an alien to be eligible for adjustment of status under that section. *See id.* at 288-90. And importantly, the BIA was careful to state its holding as limited to the terms "admitted" and "admission" when used "*by themselves*." *Id.* at 290 (emphasis added). Unlike § 1255(a), however, § 1231(a) does not use the term "admitted,"

-11-

by itself or otherwise. In enacting § 1231(a), Congress could have based an alien's eligibility for reinstatement of removal on whether she had been "admitted," as that term is defined in § 1101(a)(13)(A). But it did not do so. It chose instead to hinge eligibility for reinstatement on illegal reentry, the plain meaning of which is a reentry in violation of the law. Nor do we believe that the BIA's unusual construction of "lawful entry" in the definition of "admitted" in § 1101(a)(13)(A) – which ignores the plain meaning of that term – reasonably extends beyond its use in that definition. Unlike the BIA's analysis of the history of § 1255(a), Ms. Cordova-Soto points to no similar history of equating a procedurally regular entry with a legal *re*entry under § 1231(a)(5) or its precursor provisions.

We likewise reject the argument of amicus curiae National Immigration Project of the National Lawyers Guild that our construction of "reentered the United States illegally" impermissibly makes an alien's entry both lawful under § 1101(a)(13)(A) and unlawful under § 1231(a)(5). A procedurally regular entry may be, under the BIA's holding in *Quilantan*, a "lawful entry" for purposes of determining whether an alien was "admitted" – a term which amicus curiae acknowledges is a term of art. But it may also logically be an illegal *re*entry by a previously removed alien. Illegal *re*entry is what is at issue under § 1231(a)(5), not admission. The meaning of illegal reentry must, of course, be read in accordance with the statute as a whole. But amicus curiae conspicuously ignores

-12-

8 U.S.C. § 1326(a), which subjects a previously removed alien to criminal penalties if she "enters, attempts to enter, or is at any time found in, the United States" unless the Attorney General expressly consented in advance to her reapplying for admission, or she establishes she was not required to obtain the Attorney General's advance consent. We cannot conclude that a previously removed alien's procedurally regular entry could be, at the same time, a legal reentry for purposes of § 1231(a)(5), thereby precluding reinstatement of her removal order, yet also an illegal reentry subjecting her to criminal prosecution under § 1326(a). The BIA's reasoning in *Quilantan* is simply inapposite to the construction of the phrase "reentered the United States illegally" in § 1231(a)(5).[1]

### D.

In *Lorenzo* the petitioner was precluded from gaining lawful admission to the United States for a period of five years after her removal, and she had not

---

[1] We acknowledge that the implementing regulation does provide that, in determining "whether an alien unlawfully entered the United States," "[t]he immigration officer shall attempt to verify an alien's claim, if any, that he or she was *lawfully admitted*." 8 C.F.R. § 241.8(a)(3) (emphasis added). But in *Quilantan* the BIA contrasted the use of "lawfully admitted" in a previous version of § 1255(a) with the use of the term "admitted," by itself, in the amended version. *See* 25 I. & N. Dec. at 288 (noting amendment dropping the requirement an alien be "lawfully admitted"). And the BIA has construed "lawfully admitted," as used in another section of the INA, as requiring compliance with substantive legal requirements. *See In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003) (construing "lawfully admitted for permanent residence" as defined in 8 U.S.C. § 1101(a)(20), as requiring "compliance with substantive legal requirements, not mere procedural regularity"); *see also Gallimore v. Att'y Gen.*, 619 F.3d 216, 223-225 (3d Cir. 2010) (same, collecting cases).

sought authorization from the Attorney General to reenter. We concluded that she could not have legally reentered the country within the same month that she was removed. *See* 508 F.3d at 1283. We are not alone in construing an alien's reentry after removal—before expiration of the applicable time period in § 1182(a)(9)(A) and without the Attorney General's consent—as an illegal reentry for purposes of § 1231(a)(5). *See Anderson v. Napolitano*, 611 F.3d 275, 277, 278-79 (5th Cir. 2010) (alien could only reenter lawfully with Attorney's General's permission, citing § 1182(a)(9); passport stamp indicating she had been "admitted" was not evidence of Attorney General's consent); *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 498 (9th Cir. 2007) (reentry by previously removed alien without Attorney General's permission was unlawful under § 1182(a)(9)); *Avila-Macias v. Ashcroft*, 328 F.3d 108, 111 (3d Cir. 2003) (noting alien subject to reinstatement under § 1231(a)(5) reentered United States within ten-year period of inadmissibility under § 1182(a)(9)(A)(ii)(I)); *see also Beekhan v. Holder*, 634 F.3d 723, 725 (2d Cir. 2011) (citing § 1326(a) and holding "alien who was removed and reenters the United States without the Attorney's General's express consent, using a passport that is not her own, commits an illegal reentry"). *But see Ponta-Garcia v. Att'y Gen.*, 557 F.3d 158, 164-65 (3d Cir. 2009) (suggesting, without deciding, that reinstatement provision may be inapplicable if alien was inspected and allowed entry).

Ms. Cordova-Soto fails to establish that DHS misconstrued the meaning of "reenters the United States illegally" in § 1231(a)(5).  She was removed from the United States in November 2005, and she admittedly reentered the country, without the Attorney General's authorization, shortly thereafter.  Because she could not have entered the United States legally at that time, her reentry was illegal and she was therefore subject to reinstatement of her previous removal order under 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8(a).  *See Lorenzo*, 508 F.3d at 1284.

The petition for review is DENIED.