UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JORGE GUILLERMO AGUILAR-
ALVAREZ,

           Petitioner,

v.

ERIC H. HOLDER, JR., Attorney
General of the United States,

           Respondent.

No. 11-9556
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **MURPHY**, and **HOLMES**, Circuit Judges.

Jorge Guillermo Aguilar-Alvarez ("Mr. Aguilar") files a petition for review

from the final decision of the Board of Immigration Appeals ("BIA") affirming an

immigration judge's order of removal. He asks us to permit him to file a writ of

habeas corpus; our failure to do so, he contends, could effect a violation of the

Suspension Clause. Moreover, he challenges as improper the decision of the

Department of Homeland Security ("DHS") to re-initiate proceedings against him

---

[*]     This order is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

after it had initially sought dismissal of those proceedings without prejudice. We conclude that Mr. Aguilar lacks standing to proceed on his habeas-related claims, and that we otherwise lack jurisdiction under 8 U.S.C. § 1252(g) to review his claim related to the DHS's alleged abuse of prosecutorial discretion. We dismiss his petition for review.

**I**

Mr. Aguilar was charged by a felony information on January 28, 2004, with four counts of second-degree burglary in Tulsa County, Oklahoma. Subsequently, on February 6, 2004, he was charged—again in Tulsa County—by a second felony information with an additional six counts of burglary. A few months later, on November 30, 2004, Mr. Aguilar pleaded guilty to count four of the first information and to five of the six counts in the second information.

The Tulsa County district court thereafter placed Mr. Aguilar on a deferred sentence without a judgment of guilt, requiring him to serve five years of community service, and ordering him to pay restitution, compensation to the Oklahoma Victim's Compensation Fund, and court fees. The deferred sentence included various other rules and conditions that Mr. Aguilar had to follow in order to be deemed in compliance. In 2009, because Mr. Aguilar had complied with the requirements of the deferred sentence, the trial court entered orders "expung[ing]" his previous plea, and dismissing the action "*with* prejudice." *E.g.*, R. at 218 (Order of Expungement, filed Nov. 23, 2009) (emphasis added).

Earlier in 2009, the DHS filed against Mr. Aguilar a Notice to Appear ("NTA") in immigration removal proceedings, *see* R. at 32–33 (Tr. of Removal Hr'g, held Mar. 23, 2010), because he allegedly had been "convicted" of two or more crimes involving "moral turpitude" that did not "aris[e] out of a single scheme of criminal misconduct," 8 U.S.C. § 1227(a)(2)(A)(ii). On March 23, 2010, after holding a hearing on the NTA, an immigration judge, on the DHS's motion, terminated the removal proceedings *without* prejudice due to some apparent confusion concerning the charging documents and whether Mr. Aguilar was actually removable under § 1227(a)(2)(A)(ii). *See* R. at 33–34 ("I'll go ahead and put on the record the reason I'm terminating, Judge, is, [our] office determined in 2005 that the alien was not deportable."). One month later, the DHS re-initiated the removal charge, issuing another NTA to Mr. Aguilar on the same grounds.

Further hearings on the NTA were held in late 2010 and on February 14, 2011, and revealed that the government had initially sought dismissal without prejudice of the prior charge because the DHS's counsel had been under the erroneous impression that Mr. Aguilar's offenses arose from a *single* scheme of criminal conduct and thus, at that time, elected not to proceed with the case. Mr. Aguilar denied allegations in the NTA suggesting that he was "convicted" of multiple counts of burglary, but admitted the allegations concerning his alienage status. He also admitted that the alleged instances of burglary in the NTA "did

not arise out of a single scheme of criminal misconduct." *Id.* at 226 (NTA, dated Apr. 23, 2010).

At the February 14 hearing, the immigration judge declined to terminate the proceedings on res judicata grounds, reasoning that the prior NTA termination was made without prejudice, and that both parties had accepted that decision and "waived appeal." *Id.* at 148 (Tr. of Removal Hr'g, held Feb. 14, 2011). Regarding the removal, Mr. Aguilar's counsel argued that the expungement orders entered by the Tulsa County district court showed that his guilty pleas, which served as the basis for the NTA, had been withdrawn, and that the criminal case had been dismissed, thereby legally vitiating his convictions. The immigration judge rejected this contention, finding that, under 8 U.S.C. § 1101(a)(48) and BIA precedent, Mr. Aguilar was "convict[ed]" for purposes of federal law because he pleaded guilty to the burglary charges and received some "restraint" on his liberty. R. at 153–54. The subsequent expungement orders, in the immigration judge's view, did not alter this outcome and compel dismissal of the removal petition.

The immigration judge further found that the Oklahoma burglary "convictions" were crimes of "moral turpitude." *Id.* at 116–17 (Oral Decision of Immigration Judge, dated Feb. 14, 2011). Moreover, because Mr. Aguilar had conceded that the purported convictions all arose out of different schemes of criminal conduct, there was a sufficient basis to support the removal charge. Mr.

-4-

Aguilar did not seek discretionary relief from removal.

Mr. Aguilar retained new counsel and appealed to the BIA. He argued that: (1) the DHS's re-initiation of the removal proceedings in April of 2010 violated principles of res judicata; (2) the DHS's counsel abused its "prosecutorial discretion" by seeking to remove him after first terminating the original removal proceedings; and (3) his counsel should, "as a matter of fairness and justice," be permitted an opportunity to litigate issues overlooked by prior counsel, including the possibility that his criminal counsel was ineffective in light of the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).

However, the BIA adopted and affirmed the immigration judge's decision. More specifically, it rejected Mr. Aguilar's res judicata argument, finding that the termination of his prior proceeding had no preclusive effect. It further rejected his prosecutorial-discretion arguments because the decision on whether to place an alien into a removal proceeding is "entirely within the authority of the DHS." R. at 4 (Decision of BIA, dated Aug. 19, 2011). Additionally, the BIA found that it lacked authority to address Mr. Aguilar's claims of ineffective assistance of counsel because it was "bound by the conviction [of] record[]," and it could not "retry" his criminal case in immigration proceedings. *Id.*

## II

Mr. Aguilar petitions for review from the BIA's order dismissing his appeal of the immigration judge's decision sustaining the removal charge. As alluded to

above, 8 U.S.C. § 1227(a)(2)(A)(ii) makes removable an alien "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." *See Cordova-Soto v. Holder*, 659 F.3d 1029, 1030 (10th Cir. 2011). Section 1252(a)(2)(C), however, provides in pertinent part that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [8 U.S.C. §] 1227(a)(2)(A)(ii) . . . for which both predicate offenses are, without regard to their date of commission, otherwise covered by [§] 1227(a)(2)(A)(i)."

In other words, the jurisdictional bar applies to a removal petition filed against an alien convicted of two or more crimes involving moral turpitude under § 1227(a)(2)(A)(ii) provided that *each* crime (i.e., at least two) independently satisfies § 1227(a)(2)(A)(i)'s requirements. *See Abiodun v. Gonzales*, 461 F.3d 1210, 1215 (10th Cir. 2006); *accord Gallegos-Vasquez v. Holder*, 636 F.3d 1181, 1183 (9th Cir. 2011). Section 1227(a)(2)(A)(i) in turn provides in pertinent part that an alien is deportable if he commits a crime of moral turpitude within ten years of being admitted as a lawful permanent resident alien *and* the crime is punishable by a year or more in prison. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 906 (9th Cir. 2009) (en banc). Mr. Aguilar was "convicted" of six counts of second-degree burglary under Okla. Stat. tit. 21, § 1435, each of which is punishable by a term of imprisonment of up to seven years. *See* Okla. Stat. tit.

-6-

21, § 1436(2) ("Burglary in the second degree [is punishable by imprisonment] not exceeding seven (7) years and not less than two (2) years."). He does not contest the immigration judge's findings that his convictions satisfy the requirements of § 1227(a)(2)(A)(ii). Thus, given the language in § 1252(a)(2)(C) applying the jurisdictional bar "without regard" to the date of the commission of the triggering offenses under § 1227(a)(2)(A)(ii), judicial review of the removal order would appear to be prohibited. *See Malilia v. Holder*, 632 F.3d 598, 601 n.2 (9th Cir. 2011); *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1107 (10th Cir. 2006).

Nonetheless, § 1252(a)(2)(C)'s "jurisdictional prohibition is qualified by [8 U.S.C.] § 1252(a)(2)(D)." *Vasiliu v. Holder*, 651 F.3d 1185, 1187 (10th Cir. 2011). That provision provides that nothing in § 1252(a)(2)(C) "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D); *see Vasiliu*, 651 F.3d at 1187. We therefore have "jurisdiction over [the removal] order[] [under § 1227(a)(2)(A)(ii)] . . . but only insofar as the petition for review raises constitutional or legal challenges to the removal order." *Vasiliu*, 651 F.3d at 1187; *see Hamilton v. Holder*, 584 F.3d 1284, 1286 (10th Cir. 2009). And "[w]e review each of the [legal and constitutional] issues raised in the petition de novo." *Brue v. Gonzales*, 464 F.3d 1227, 1232 (10th Cir. 2006); *see Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1019 (10th Cir. 2007).

-7-

## III

Mr. Aguilar raises multiple issues concerning his removal proceedings. Broadly speaking, he lodges challenges against the jurisdiction-stripping provisions added to the federal immigration scheme via the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 302 (2005) (codified as amended in scattered sections of, *inter alia*, 8 U.S.C.). Second, he contends that the DHS's decision to re-initiate the removal proceedings after dismissing them without prejudice was an unlawful abuse of its prosecutorial discretion.

## A

Mr. Aguilar argues that the REAL ID Act does not apply to him because he was convicted in Oklahoma, a state that has opted out of various registration requirements of the Act. Second, he contends that the Act's jurisdiction-stripping provisions violate the Suspension Clause of the U.S. Constitution as applied to his case. These arguments represent an attempt to evade the jurisdiction-stripping provisions added by the REAL ID Act, which speak to the availability of habeas corpus relief, *see* 8 U.S.C. § 1252(a)(2)(C) ("Notwithstanding any other provision of law . . . including [§] *2241* of Title 28, *or any other habeas corpus provision*, . . . no court shall have jurisdiction to review . . . [removal orders issued under § 1227(a)(2)(A)(ii)]." (emphases added)); *see also id.* § 1252(a)(5) ("For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review'

include habeas corpus review . . . [under] any . . . habeas corpus provision . . . .").

We conclude, however, that Mr. Aguilar lacks standing to challenge the REAL ID

Act's jurisdiction-stripping provisions as they relate to the restrictions on habeas

review.

Article III of the U.S. Constitution limits the jurisdiction of federal courts

to the adjudication of "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1.

We may pass only upon matters that are properly justiciable under Article III.

*See Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004). A key component

of justiciability is Article III standing, *see, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111,

1120 (10th Cir. 2012), a concept that requires the litigant seeking keys to the

federal courthouse to "allege[] . . . a [sufficient,] personal stake in the outcome of

the controversy," *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Summers v.

Earth Island Inst.*, 555 U.S. 488, 493 (2009)) (internal quotation marks omitted).

"To establish . . . standing, the [litigant seeking to avail himself of federal

jurisdiction] bears the burden of demonstrating the following three elements: (1)

an injury in fact; (2) a causal connection between the injury and the challenged

action; and (3) a likelihood that a favorable decision will redress the injury."

*Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011); *accord Ibrahim v. Dep't of

Homeland Sec.*, 669 F.3d 983, 992 (9th Cir. 2012); *see Coll v. First Am. Title Ins.

Co.*, 642 F.3d 876, 892 (10th Cir. 2011).

The government contends that Mr. Aguilar lacks an injury in fact because

he has not (by his own admission) attempted to file a habeas petition. However, we need not assess the merit of that contention because Mr. Aguilar has not (and cannot) show that the redressability component of standing is satisfied here. Standing requires a petitioner to allege an injury that can be "redressed by a favorable decision." *Camreta v. Greene*, 131 S.Ct. 2020, 2028 (2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal quotation marks omitted). "To satisfy the 'redressability' prong of the standing test, the [petitioner] must demonstrate that a substantial likelihood [exists] that the relief requested will redress the injury claimed." *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 875 (10th Cir. 1992) (second alteration in original) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (1978)) (some internal quotation marks omitted); *see Camreta*, 131 S. Ct. at 2028–29; *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752–55 (2010); *Summers*, 555 U.S. at 493–96; *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286–87 (2008); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "This requirement [helps] assure[] that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" *Summers*, 555 U.S. at 493 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974)).

Mr. Aguilar's arguments seek exemption from the REAL ID Act's jurisdiction-stripping provisions so that he may file a habeas action, with the

ultimate goal of vitiating the factual foundation of his removal order.  At bottom,

Mr. Aguilar endeavors to challenge the deferred adjudications entered in 2004 on

the ground that his counsel was ineffective under *Padilla* in failing to advise him

of the immigration consequences of his pleas.[1]  However, even if we ultimately

---

[1]    At oral argument, counsel conceded that he was seeking to challenge the underlying *convictions* on ineffective assistance of counsel grounds.  *See* Oral Arg. at 5:20–6:02.  This concession is largely consistent with the overall pith of his brief.  *See, e.g.*, Pet'r Br. at 7 (suggesting that he ought to be able to "litigate issues . . . regarding the ineffective assistance of counsel during [his] criminal case").

Relatedly, Mr. Aguilar asks us to convert his petition for review into a petition for a writ of habeas corpus.  We decline.  First, a removal proceeding, as a creature of Article I, plainly does not contemplate the assertion of habeas corpus.  *See Vasiliu*, 651 F.3d at 1187 ("The government maintains that our jurisdiction under § 1252(a)(2)(D) extends only to the review of *colorable* constitutional claims and that Mr. Vasiliu's *Padilla* claim is substantively meritless.  But whether his contention has merit or not, we cannot address it because a challenge to an alien's criminal conviction, upon which a removal order is based, is beyond the scope of removal proceedings."); *Waugh v. Holder*, 642 F.3d 1279, 1283 (10th Cir. 2011) ("[N]either the [immigration judge] nor the BIA has authority to adjudicate the constitutionality of an underlying criminal conviction.").  Moreover, Mr. Aguilar provides no support for such a novel remedy, and we could locate none.

Mr. Aguilar raises an incidental argument that his due process right to a full and fair deportation hearing is being denied because he lacks the ability to challenge the underlying "presumptively constitutionally void" plea agreements under *Padilla*.  Pet'r Br. at 13.  We squarely rejected such an argument in *Waugh*, where we declined to impose upon the DHS the "burden . . . to prove as part of *its* case that [a petitioner's] conviction was constitutional under the Sixth Amendment," in light of the holding in *Padilla*.  *See* 642 F.3d at 1282.  Mr. Aguilar erroneously maintains without support that *Padilla* singles out a particular constitutional infirmity that must be given heightened protection in removal proceedings.  However, there is "nothing in *Padilla* that would create the

(continued...)

-11-

concluded that Mr. Aguilar could file a habeas action to challenge his underlying "convictions" (i.e., deferred adjudication orders), such relief would be illusory because any such habeas action that Mr. Aguilar might pursue would be time-barred under the limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Under AEDPA, a federal habeas petition challenging a state criminal judgment must be filed "within the one-year limitation period set forth in [28 U.S.C.] § 2244(d)(1)." *Sigala v. Bravo*, 656 F.3d 1125, 1126 (10th Cir. 2011). The one-year period runs from the latest of four specified dates in § 2244(d)(1), including, as pertinent here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Generally, under Oklahoma law, a trial judge is permitted to defer the adjudication of guilt—as was done in this case—where the facts of the crime are otherwise conclusively established. *See* Okla. Stat. tit. 22, § 991c(A); *cf.* Okla. Stat. tit. 63, § 2-410. In doing so, the judge typically enters a deferred adjudication order setting forth certain penalties and various conditions to be satisfied in order for the defendant to have the criminal matter later

---

[1](...continued)
unique burden petitioner proposes." *Id.* at 1283. Indeed, a conviction may suffer from a host of constitutional errors, but that does not change the DHS's sole purpose in a removal proceeding—*viz.*, to prove that such a conviction exists *and* that it meets the requirements for removal. *See* 8 U.S.C. § 1229a(c)(3)(A).

expunged from his record.  *See* Okla. Stat. tit. 22, § 991c.

We note that whether a deferred adjudication order (here, under Oklahoma law) constitutes a "judgment" sufficient to allow for habeas relief and trigger the start of the statutory time period under § 2244(d)(1) is a matter of first impression in our circuit.[2]  The question is relevant because AEDPA presupposes the existence of a state court judgment both in order to seek habeas relief in the first instance, *see* 28 U.S.C. § 2254(a), and as a predicate for kick-starting the limitations period for seeking that relief, *see id.* § 2244(d)(1).  Unfortunately, there is little authority on this matter.  In fact, the Fifth Circuit seems to be the only circuit that has considered an analogous question.  *See Caldwell v. Dretke*, 429 F.3d 521, 526–27 (5th Cir. 2005).

Thankfully, we need not grapple here with this thorny question.  Even if we were to assume that an Oklahoma deferred adjudication order qualified under AEDPA as a "judgment," clearly any attempt by Mr. Aguilar to file a habeas petition seeking to vacate the 2004 deferred adjudication orders would now be time-barred under AEDPA's one-year limitations period, because he has still not filed a habeas action, now multiple years after the conclusion of the time he could

---

[2]  In entering a deferred adjudication order under Oklahoma law, a trial court must not issue a "judgment of guilt," *see* Okla. Stat. tit. 22, § 991c(A); if a defendant satisfactorily completes the conditions of a deferred judgment order, the court may "order the verdict or plea of guilty or plea of nolo contendere to be expunged from the record and the charge shall be dismissed with prejudice to any further action," *id.* § 991c(C).

have sought review under state law and that those "judgments" became final.

*Compare, e.g.*, Okla. Stat. tit. 22, § 1051(a) (ninety days to challenge the terms of

a deferred adjudication order), *with* Okla. Stat. tit. 22, Ch. 18, App., R. 4.2(A)

(ten days to challenge the predicate plea).[3]

Accordingly, any relief we could provide would be illusory: even if we

authorized Mr. Aguilar to pursue a habeas action to attack his 2004 deferred

adjudications, such an action would be time-barred under AEDPA.  *See Emery v.*

*Roanoke City Sch. Bd.*, 432 F.3d 294, 298–99 (4th Cir. 2005) (holding that the

plaintiff failed to establish "redressab[ility]" in arguing that he had been

inappropriately denied certain state benefits because he was no longer eligible for

---

[3] Indeed, even if we went so far as to assume that Mr. Aguilar could conceivably challenge his deferred adjudication orders through a habeas action predicated on the subsequent judgment entered in his state case on November 23, 2009, that dismissed the entire action *with* prejudice, such a habeas action would be time-barred.  The operative date that this judgment became final for AEDPA purposes was the date it was entered because no further review of this favorable judgment existed under state law.  Specifically, Mr. Aguilar cannot under Oklahoma law seek appellate review of a favorable dismissal with prejudice—or any antecedently adjudicated facts.  *See* Okla. Stat. tit. 22, § 1051(a) ("An appeal to the Court of Criminal Appeals may be taken by the defendant, as a matter of right from any judgment *against him* . . . ." (emphasis added)); *Gonseth v. State*, 871 P.2d 51, 54 (Okla. Crim. App. 1994); *see also Greenwood v. State*, 375 P.2d 661, 664 n.1 (Okla. Crim. App. 1962) ("The term 'judgment' in § 1051 has been construed by this Court as 'final judgment'.  Appeals to Criminal Court of Appeals are from final judgment against defendant." (quoting *Gibson v. State*, 197 P.2d 310, 313 (Okla. Crim. App. 1948)) (some internal quotation marks omitted)).  Therefore, AEDPA's one-year limitations period would have long since expired—even if a date some five years after the deferred adjudication orders was treated as the operative one.

-14-

those benefits under state law due partly to the fact that the statutory period for seeking them had run); *Takhar v. Kessler*, 76 F.3d 995, 1001 (9th Cir. 1996) (holding that the plaintiff's challenges to the validity of a prior conviction were not redressable in administrative proceedings because the "proper avenue" for seeking such relief was via direct appeal or habeas corpus, and he sought neither of those remedies); *see also Warth v. Seldin*, 422 U.S. 490, 505–07 (1975) (ascertaining a lack of a causal relationship between the plaintiffs' asserted injuries in losing out on affordable housing in light of a zoning ordinance and any relief the court might grant, because there was no indication that affordable housing would be available if the ordinance was struck). Furthermore, Mr. Aguilar does not allege any facts that would entitle him to the application of tolling to save his proposed habeas petition. *See Sigala*, 656 F.3d at 1127.

Thus, after the rough procedural complications in this case are chiseled away, a conclusion resting on a smooth rationale remains: We can provide Mr. Aguilar with no remedial benefit. In other words, a favorable decision by this Court holding that Mr. Aguilar may file a federal habeas petition challenging his burglary convictions under *Padilla* would amount to little more than a hollow gesture—indeed, an empty one providing him at best with "abstract vindication." 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3531.6, at 395 (3d ed. 2008). Consequently, he lacks

-15-

standing to challenge the REAL ID Act.[4]

**B**

Mr. Aguilar also contends that, "[a]s a matter of policy, fairness, and justice, the immigration attorney should not have abused his prosecutorial discretion by again seeking to remove Mr. Aguilar after terminating the initial removal case." Pet'r Br. at 21. The government contends that 8 U.S.C. § 1252(g) limits our jurisdiction to consider Mr. Aguilar's claims concerning the DHS's alleged abuse of its prosecutorial discretion. We agree with the government.

In determining whether the DHS's actions in this case fall within § 1252(g), we first examine, as the initial step in our analytical journey, the plain text of the provision. *See United States v. Lamirand*, 669 F.3d 1091, 1094 (10th Cir. 2012). Here, the relevant language clearly illuminates our path. Section 1252(g) bars our jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[5] *Accord Luevano v. Holder*, 660 F.3d 1207, 1210 n.2 (10th Cir.

---

[4] Because we conclude that Mr. Aguilar lacks standing to proceed, we do not address the government's alternative argument that an opinion from this court on the constitutionality of the REAL ID Act's jurisdiction-stripping provisions would amount to an impermissible advisory opinion.

[5] This provision, though referring to the Attorney General, has been applied to the Secretary of the DHS. *Ali v. Mukasey*, 524 F.3d 145, 150 & n.5 (2d Cir. 2008) (discussing and quoting 6 U.S.C. § 202(3), which "transferred to the

(continued...)

2011).  "[This section] was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."  *Reno v. American-Arab Anti-Discrimination Comm.* (*AAADC*), 525 U.S. 471, 485 n.9 (1999).

Here, the NTA was initially dismissed on motion of the DHS, and it was dismissed *without prejudice*.  The government attorney made absolutely clear on the record that he was going to revisit the matter in order to reassess the basis for the charging document.  *See* R. at 35 ("I would still consider this a conviction, however, I want to do some more research on this, and find out why this was ruled earlier not to be a conviction . . . .").

In other words, there was no final decision about whether the government would proceed with the case, and Mr. Aguilar was clearly made aware that the action could be re-initiated.  All of Mr. Aguilar's prosecutorial-discretion contentions concern the propriety of the DHS's act of re-commencing removal proceedings against him, and we have no jurisdiction under § 1252(g) to consider them.  *See Zundel v. Holder*, 687 F.3d 271, 279 (6th Cir. 2012) (noting the lack of jurisdiction to consider an inquiry "arising from the Attorney General's decision to adjudicate (or not adjudicate) cases"); *see also Lemos v. Holder*, 636 F.3d 365,

_____

[5](...continued)
Secretary of DHS the responsibility for '[c]arrying out the immigration enforcement functions vested by statute in, or performed by, the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service).'" (alteration in original)); *accord Elgharib v. Napolitano*, 600 F.3d 597, 606–07 (6th Cir. 2010).

367 (7th Cir. 2011); *Hanggi v. Holder*, 563 F.3d 378, 383 (8th Cir. 2009); *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008). The thrust of Mr. Aguilar's claims is that the DHS acted outside of its statutorily bestowed discretion; such claims occupy an area that is off-limits to our review. *See AAADC*, 525 U.S. at 485 n.9. Mr. Aguilar has provided no basis for us to conclude otherwise.[6] In sum, we lack jurisdiction to consider Mr. Aguilar's prosecutorial-discretion arguments.

**IV**

Mr. Aguilar's petition for review is **DISMISSED**.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

---

[6] Because we lack jurisdiction under § 1252(g), we need not consider the government's alternative procedural arguments.