FILED
United States Court of Appeals
Tenth Circuit

January 22, 2019

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

GABRIEL ORLANDO CARRINGTON,

    Petitioner,

v.

MATTHEW G. WHITAKER, Acting
United States Attorney General,[*]

    Respondent.

No. 18-9531
(DHS No. 0592)
(DHS Homeland Security)

_____

## ORDER AND JUDGMENT[**]

_____

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

_____

Gabriel Orlando Carrington petitions for review of the Department of

Homeland Security's (DHS) order reinstating his prior removal order under 8 U.S.C.

§ 1231(a)(5). "We have jurisdiction to hear petitions for direct review of

---

[*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Matthew G. Whitaker is substituted for Jefferson B. Sessions, III, as the
respondent in this action.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

reinstatement orders under [8 U.S.C.] § 1252." *Cordova-Soto v. Holder*, 659 F.3d 1029, 1032 (10th Cir. 2011) (alterations and internal quotation marks omitted). We deny the petition for review.

## BACKGROUND

Mr. Carrington is a native and citizen of Barbados. He originally entered the United States in 1990 and obtained a legal permanent resident card (I-551 Card). He later pled guilty to and was convicted of possession of a controlled substance (cocaine) in 1994, driving while ability impaired in 2001, and weapon possession by a previous felony offender in 2004. In June 2005, an immigration judge ordered Carrington removed to Barbados as an aggravated felon. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). A Warrant of Removal/Deportation was issued a short time later, and Carrington was given a Warning to Alien Ordered Removed or Deported (Form I-294). In relevant part, Form I-294 warned Carrington that removal due to his aggravated-felony conviction meant he was "prohibited from entering, attempting to enter, or being in the United States . . . [a]t any time." Admin. R. at 12. Form I-294 also warned Carrington that after his removal, he had to "request and obtain permission from the Attorney General to reapply for admission to the United States," and he had to obtain that "permission before commencing [his] travel to the United States." *Id.* He was further warned that without the Attorney General's consent, it is a crime to enter, attempt to enter, or be found in the United States during the period he was barred from doing so. Carrington signed the form, confirming his receipt of the warnings regarding reentry. In November 2005, he was removed to Barbados.

2

In 2018, immigration officials encountered Carrington at the Colorado Department of Motor Vehicles. After an interview with DHS officers, he was taken into custody, waived his right to have an attorney present, and provided a sworn statement. Carrington claimed that he reentered the United States on a bus near Detroit, Michigan, a "little over a year after returning to Barbados." *Id.* at 8. At the border, he presented his I-551 Card, which had not been confiscated from him prior to his 2005 removal, and he was permitted to enter the United States. He claimed the immigration officer did not perform any system checks before allowing him to enter. Carrington conceded that he did not obtain permission from the Attorney General to reenter the United States after his removal.

Based on Carrington's statement, DHS served him with a Notice of Intent/Decision to Reinstate Prior Order (Notice). The Notice advised Carrington that he was subject to removal under 8 U.S.C. § 1231(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

In the Notice, DHS found that Carrington had been previously ordered removed and was physically removed in 2005, and that he illegally reentered in 2006. The Notice advised Carrington that he could contest reinstatement "by making a written or oral statement to an immigration officer." Admin. R. at 1. Carrington acknowledged his right to contest reinstatement, signed the form, and waived his

3

right to make any written or oral statement. Consequently, DHS found Carrington removable as an alien who illegally reentered the United States after having been previously removed under a final removal order and therefore was subject to removal by reinstatement of his prior order.

## DISCUSSION

Carrington argues that because his entry into the United States in 2006 was procedurally regular, he did not reenter "illegally" within the meaning of § 1231(a)(5). This "raises a question of statutory interpretation, which we review de novo." *Cordova-Soto*, 659 F.3d at 1032. But Carrington's argument, as he recognizes, is foreclosed by our precedent. In *Cordova-Soto*, we rejected a materially identical argument—"that a previously removed alien's *re*entry is . . . 'lawful' if it was procedurally regular," and therefore "the language 'reentered the United States illegally' in § 1231(a)(5) does not mean a reentry in violation of substantive law." *Id.* at 1034. And we did so on materially identical facts: An alien who was previously removed due to an aggravated-felony conviction attempted to reenter the United States in a taxi transporting two others. *Id.* at 1031. As she pretended to search for her ID, the taxi was waved through by an immigration officer. *Id.* She had not applied to the Attorney General for permission to reenter. *Id.*[1] We

[1] One factual distinction between *Cordova-Soto* and this case is that Cordova-Soto was able to slip across the border without showing any identification but Carrington allegedly presented his I-551 Card, albeit an invalid one. Carrington's argument, however, does not rely on this distinction.

further noted that our analysis aligned with other circuit decisions construing a reentry without the Attorney General's consent as an illegal entry for § 1231(a)(5) purposes. *Id.* at 1035 (collecting cases).[2] And the Supreme Court denied review. *Cordova-Soto v. Holder*, 133 S. Ct. 647 (2012).

Carrington argues that *Cordova-Soto* was wrongly decided. But under the doctrine of *stare decisis*, "[w]e are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court." *United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000) (internal quotation marks omitted). And "[t]he precedent of prior panels which this court must follow includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law." *Id.*

Lacking en banc reconsideration or a superseding contrary Supreme Court decision, we must follow our determination in *Cordova-Soto* that a procedurally regular entry into the United States does not remove from the scope of § 1231(a)(5) a

_____

[2] As Carrington observes, the Seventh Circuit has recently taken the same position. *See Mendoza v. Sessions*, 891 F.3d 672, 680 (7th Cir. 2018) ("A person who reenters without the consent of the Attorney General during the required period violates at least two laws and therefore reenters illegally. . . . Congress could not have intended for such a reentry to be considered lawful merely because a border inspector mistakenly waved the violator into the country."). And the Ninth Circuit has reaffirmed its position. *See Tamayo-Tamayo v. Holder*, 725 F.3d 950, 953 (9th Cir. 2013) (denying en banc rehearing and "hold[ing] that Petitioner's substantively illegal reentry met the requirement in § 1231(a)(5) that he had 'reentered the United States illegally,' notwithstanding the fact that he tricked the border official into allowing him physically to enter.")).

substantively illegal entry such as Carrington's. That Carrington may have been mistakenly allowed entry without a complete individual inspection does not change the fact that his entry was substantively illegal. *See Cordova-Soto*, 659 F.3d at 1034 (recognizing that "[a] procedurally regular entry may be . . . a 'lawful entry' for purposes of determining whether an alien was 'admitted'" under Board of Immigration Appeals precedent, "[b]ut it may also logically be an illegal *re*entry by a previously removed alien"); *see also Lorenzo v. Mukasey*, 508 F.3d 1278, 1282–83 (10th Cir. 2007) (reasoning that the allegation of an alien "that she reentered the United States in the back of a car, without immigration officials questioning her right to enter, fails to amount to a claim that she entered the country legally" because she reentered during the five-year period she was barred from doing so without authorization). We therefore conclude that DHS correctly reinstated Carrington's prior removal order based on his illegal 2006 reentry. Accordingly, the petition for review is denied.

Entered for the Court


Carolyn B. McHugh
Circuit Judge